## JORDAN et al. v. NESMITH et al.

No. 17653. Opinion Filed Feb. 7, 1928.

Rehearing Denied Sept. 18, 1928.

(Syllabus.)

**1. Nuisance—Funeral Home Not Nuisance Per Se.**

An undertaking establishment or funeral home is not a nuisance per se, but it may be a nuisance either by reason of location or by reason of improper or negligent manner in which it is conducted.

**2. Same—Abatement of Nuisance—Injunction Against Operation of the Business at Location.**

Where the evidence shows that a lawful business is being conducted in such a manner as to constitute a private and public nuisance, causing substantial injury to the comfort, health, or property of adjoining property owners, a court is authorized in enjoining and abating such nuisance. And where it clearly appears that such business cannot be conducted in any manner at the place where situated without constituting a substantial injury to the adjoining property owners, the injunction should absolutely prohibit the operation of such business in that location.

**3. Same—Business as Nuisance in Residential Section.**

When the prosecution of a business, of itself lawful, in a strictly residential district, impairs the enjoyment of homes in the neighborhood, and infringes upon the well-being, comfort, repose, and enjoyment of the ordinary normal individual residing therein, the carrying on of such business, in such locality, becomes a nuisance and may be enjoined.

Error from District Court, Grady County; Will Linn, Judge.

Action by W. H. Nesmith et al. against M. A. Jordan et al. to restrain the defendants from maintaining an undertaking establishment. Judgment for plaintiffs, and defendants appeal. Affirmed.

Womack, Brown & Cund and Melton & Melton, for plaintiffs in error.

Barefoot & Carmichael, for defendants in error.

MASON, V. C. J. The defendants in error were plaintiffs and the plaintiffs in error were defendants in the trial court, and, for convenience, they will be referred to herein as they there appeared.

Plaintiffs brought this action to restrain the defendants from maintaining an undertaking establishment or funeral home and morgue on lots 18, 19, and 20, block 70, of the city Chickasha. It was alleged that each of the plaintiffs owned and occupied a dwelling house in the immediate vicinity of the property of the defendants; that the defendants were threatening to establish and operate an undertaking establishment thereon; that the property of both the plaintiffs and the defendants was situated in a section of the city used exclusively for residence purposes. It was further alleged that if said defendants were permitted to establish, maintain, and operate said funeral home and morgue on said property, the value of plaintiffs' property and the desirability thereof, as homes, would be greatly decreased; that plaintiffs and their families and friends, who might visit them in their homes, would be in great danger of infectious and contagious diseases from the bodies of persons dying from such infectious and communicable diseases taken to the defendant's morgue; that disagreeable and noxious odors would be emitted from said building and said business and would contaminate the air in the immediate neighborhood; that dead bodies would be taken there for autopsies and embalming; that bodies of persons meeting with accidental death and the unknown dead would be taken there and left for an indefinite length of time pending identification; that frequent funerals would be conducted from said funeral home and the frequent coming and going of hearses would create a constant reminder of death and would be depressing to the plaintiffs and their families, friends, and tenants; that the plaintiffs, their families, friends, and tenants would thereby be rendered less able to resist diseases and that the establishment, maintenance, and carrying on of said funeral home and morgue on said premises and in the particular location described would be a menace to the health, peace, comfort, and repose of the plaintiffs, their families, friends, and tenants and all other persons residing in the immediate neighborhood.

The answer admitted that the defendant Fowler owned the property complained of; that the defendants intended to conduct an undertaking business thereon, unless re-

strained by the court. It was alleged that the operation of such business was not a nuisance per se and that the defendants expected to follow the latest and most improved methods in conducting said business, and that, therefore, it would not become a nuisance by reason of the method or manner in which said business would be conducted.

After a hearing, the trial court made the following findings of fact: That the defendant Fowler is the owner of lots 18, 19, and 20, in block 70, in the city of Chickasha, with a large two-story dwelling house thereon; that the walls of the house are 125 ft. from the nearest dwelling of plaintiffs; that defendants propose to establish and operate therein a funeral home or funeral parlors where dead bodies will be embalmed and prepared for burial; that funeral services will be held and funeral supplies displayed and offered for sale; that it was not the intention of defendants, in the operation of said business, to take upon said premises bodies of persons dying from communicable diseases, and that plaintiffs will not be endangered thereby; that said defendants do not intend to take decomposed bodies upon the premises and plaintiffs will suffer no annoyance and discomfort of odors attendant upon the handling of decomposed bodies; that said defendants do not intend to take upon said premises unidentified bodies and plaintiffs will suffer no annoyance or discomfort from persons going to and from such building for the purpose of identifying the unknown bodies; that the methods under which said defendants intend to operate said business and the location of said property are such that plaintiffs will suffer little, if any, annoyance or discomfort from odors and fumes escaping from the premises, and that said defendants intend to so construct their funeral home and undertaking establishment that the unloading of bodies taken to such premises will not be exposed to the view of the plaintiffs or other persons not on such premises.

The court further found that the defendants' property was located in an exclusive residential section of said city; that the property of the plaintiffs and the defendants has, at all times, been used and occupied for homes and residences; that the establishment and operation of defendants' business will have a depressing effect upon the plaintiffs and others residing in the immediate neighborhood, will break down their power of resistance, render them more liable to contracting diseases, and will result in discomfort to them and render the property of plaintiffs less desirable for homes and residences and interfere with plaintiffs in the comfort and undisturbed use and enjoyment of their property as residences and homes.

The court then concluded that the establishment and operation of defendants' proposed business in an exclusive residential section of the city would, under the law, constitute a nuisance, and enjoined the establishing, maintaining, or operating of the same at that place. The defendants have duly perfected their appeal to this court.

Three assignments of error are urged which present the sole question of whether, in the absence of some enactment under the police power of the state restricting the use of property, plaintiffs were entitled to injunctive relief upon the sole ground that the presence, in the immediate neighborhood of their homes and in an exclusive residence district of Chickasha, of an undertaking establishment, properly and sanitarily conducted, with its attendant receipt, removal, and preparation for burial of dead human bodies, and the conducting of funeral services, would have such a depressing effect upon the minds of normal persons living in the immediate vicinity thereof that it would render them more susceptible to contracting diseases, or would excite sufficient dread or terror to deprive them of the comfort and enjoyment of their homes. This is the first time, so far as we have been able to ascertain, that this question has been presented to this court.

Section 7870, C. O. S. 1921, defines "nuisance" as follows:

"A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:

"First, annoys, injures or endangers the comfort, repose, health, or safety of others; or,

"Second, offends decency; or,

"Third, unlawfully interferes with, obstructs or tends to obstruct, or renders dangerous for passage, any lake or navigable river, stream, canal or basin, or any public park, square, street or highway; or,

"Fourth, in any way renders other persons insecure in life, or in the use of property."

Section 7871 defines a "public nuisance" as follows:

"A public nuisance is one which affects at the same time an entire community or neighborhood, or any considerable number of persons, although the extent of the annoyance or damage inflicted upon the individuals may be unequal."

Section 7872 provides:

"Every nuisance not included in the definition of the last section is private."

A mere trifling annoyance, inconvenience, or discomfort to one with too fastidious or refined tastes will not constitute a nuisance, yet a nuisance exists where noxious odors or other conditions are a substantial annoyance or physical discomfort to an ordinary person, or an injury to his health or property. Joyce on, Nuisances, pars. 157 and 162; Wood on Nuisances, par. 600; 20 R. C. L. secs. 382, 383.

It is not necessary to entitle a plaintiff to relief that the nuisances should actually produce disease if they are disagreeable and offensive to such an extent as to render life substantially uncomfortable. Meigs v. Lister, 23 N. J. Eq. 199; Catlin v. Valentine, 9 Paige (N. Y.) 577, 38 Am. Dec. 567; Brady v. Weeks, 3 Barb. (N. Y.) 157; Joyce on Nuisances, pars. 87, 166; 29 Cyc. 1190, 1192, 1194.

It is urged, however, that the undertaking business is not a nuisance per se. This is the general rule, although it may become a nuisance by reason of its method of operation in connection with its location.

An instrumentality that is at all times and under all circumstances, irrespective of its location and environment, a nuisance is said to be a nuisance per se. There are instrumentalities, however, which in their nature are not nuisances, and whether a particular instrumentality constitutes a nuisance depends upon its surroundings, the manner in which it is conducted or managed, or other circumstances. 20 R. C. L. 383.

It, therefore, may be conceded that the establishment and operation of defendants' funeral home or undertaking establishment would not constitute a nuisance per se, but evidence was introduced showing that its location and other circumstances rendered this particular instrumentality both a public and private nuisance.

Joyce on Nuisances, p. 162, quotes from a Maryland case as follows:

"No principle is better settled than that where a trade or business is carried on in such a manner as to interfere with the reasonable and comfortable enjoyment by another of his property, or which occasions material injury to the property itself, a wrong is done to the neighboring owner, for which an action will lie. And this, too, without regard to the locality where such business is carried on; and this, too, although the business may be a lawful business, and one useful to the public, and although the best and most approved appliances and methods may be used in the conduct and management of the business."

In the fourth paragraph of the syllabus of Kenyon v. Edmundson, 80 Okla. 3, 193 Pac. 739, we announced the following rule, which is applicable herein:

"Where the facts show that a lawful business is being conducted in such a manner as to constitute a private and public nuisance, causing substantial injury to comfort, health, or property, a court is authorized in enjoining and abating such nuisance. The injunction ordinarily should be limited, not to the business itself, but to the usage that creates the nuisance, leaving the right to carry on the business in a proper and lawful manner; but, where it clearly appears that such business cannot be conducted in any manner at the place where situated without constituting a substantial injury to adjoining property owners, the injunction should absolutely prohibit the operation of such business."

Counsel for defendants, therefore, argue that an undertaking establishment conducted in keeping with the findings of the trial court, thus eliminating all question of communicating disease or fouling the air with noxious or offensive odors and gases, cannot be held to be a nuisance, although conducted in an exclusive residential neighborhood. In other words, in order for such establishment to constitute a nuisance, its character must be such as to directly affect the health or grossly offend the physical senses. The adjudicated cases upon this question, which we have examined, do not support such position. While it is true that in many, if not all of them, the charge was made that the establishment complained of would communicate contagion and would emit noxious gases and offensive odors, such charge was almost universally found to be without substantial support in the evidence. The basis of injunctive relief by the courts in these cases seems, in the last analysis, to have been the fact that constant reminders of death, such as an undertaking establishment and the activities connected with it, impair in a substantial way the comfort, repose, and enjoyment of the homes in that immediate neighborhood. Tureman v. Ketterlin (Mo.) 263 S. W. 202, 43 A. L. R. 1155; Saier v. Joy, 198 Mich. 295, 164 N. W. 507, L. R. A. 1918A, 825; Densmore v. Evergreen Camp, 61 Wash. 230, 112 P. 255, 31 L. R. A. (N. S.) 608, Ann. Cas. 1912B, 1206; Osborn v. Shreveport, 143 La. 932, 79 So. 542, 3 A. L. R. 955; City of St. Paul v. Kessler, 146 Minn. 124, 178 N. W. 171; Meagher v. Kessler, 147 Minn. 182, 179 N.

W. 732; Goodrich v. Starrett, 108 Wash. 437, 184 P. 220; Beisel v. Crosby, 104 Neb. 643, 178 N. W. 272; Rowland v. Miller, 139 N. Y. 93, 34 N. E. 765, 22 L. R. A. 182; Cunningham v. Miller, 178 Wis. 22, 189 N. W. 531, 23 A. L. R. 739.

In Saier v. Joy, supra, the Supreme Court of Michigan said:

"We think it requires no deep research in psychology to reach the conclusion that a constant reminder of death has a depressing influence upon the normal person. Cheerful surroundings are conducive to recovery for one suffering from disease, and cheerful surroundings are conducive to the maintenance of vigorous health in the normal person. Mental depression, horror, and dread lower the vitality, rendering one more susceptible to disease, and reduce the power of resistance. There is an abundance of testimony in this record confirmatory of this, and it is a matter of common knowledge. The constant going and coming of the hearse, * * * the not infrequent taking in and out of dead bodies; the occasional funeral with its mourners and funeral airs, held in the part of the house designed for a chapel; the unknown dead in the morgue, and the visits of relatives seeking to identify them, the thought of autopsies, of embalming; the dread, or horror, or thought, that the dead are or may be lying in the house next door, a morgue; the dread of communicable disease, not well founded, as we have seen, but nevertheless present in the mind of the normal layman—all of these are conducive to depression of the normal person; each of these is a constant reminder of mortality. These constant reminders, this depression of mind, deprive the home of that comfort and repose to which its owner is entitled."

The Supreme Court of Louisiana, in Osborn v. Shreveport, supra, in summarizing its conclusions with respect to the disturbing effect of an undertaking establishment on home life, said:

"We find no reason to doubt that plaintiff conducts his business after the most approved methods and with as little offense to those by whom he may be surrounded as the business will admit; but, to the incidents mentioned, there is to be added the fact that the business itself is a gruesome one, and that the psychological influence of being confronted, and having one's family confronted, day after day and at all hours of the day, with death, and its woeful trappings in the shape of hearses and other vehicles, carrying in and out of a neighboring building the mortal remains of some fellow being, is no more enlivening nor wholesome than would be the constant presence of the same corpse, or the immediate proximity of a graveyard: and we take judicial notice that the introduction of such a business into a residential neighborhood, where none has

previously been established, will inevitably depreciate the value of the property as well as discommode the owners. The case is, therefore, one in which the maxim, 'Sic utere tuo,' etc., is particularly applicable, and if the city of Shreveport had no power to enforce that maxim and protect its citizens in the peace and quiet of their homes, they would be entitled to much sympathy."

With reference to a "funeral home," such as the one involved in this case, the Supreme Court of Minnesota in St. Paul v. Kessler, supra, said:

"We agree with the courts above mentioned that the ordinary normal person cannot live next door to an undertaking establishment or funeral home, where dead bodies are continuously carried in and out and are kept for longer or shorter periods, without thereby being more or less deprived of the comfortable enjoyment of his home. The business, then, is such that it may be regarded as a private nuisance in residence districts."

In a later case dealing also with a "funeral home," the same court, in Meagher v. Kessler, said:

"The general principles involved in these cases fully justify the conclusions arrived at by the learned trial court in the case at bar. The feelings and sentiments of the respondents are those of the ordinary normal individual living under similar conditions, that is, being compelled, by day and night, to look out from their homes upon an institution devoted solely to the carrying in and out of dead bodies, and the conducting of obsequies. It is the almost universal rule that an undertaking business is not a nuisance per se, but, as generally held, the ordinary person can hardly live next door to such an establishment without becoming depressed and more or less deprived of the comforts and enjoyment of his surroundings and when long continued it is liable to affect his general health.

"We conclude that the rule must be considered as well settled that when the prosecution of a business, of itself lawful, in a strictly residential district, impairs the enjoyment of homes in the neighborhood, and infringes upon the well-being and comfort of the ordinary, normal individual residing therein, the carrying on of such business, in such locality, becomes a nuisance and may be enjoined."

The Supreme Court of Nebraska, in holding that the maintenance of a "funeral home" in a residential district might be enjoined, in Beisel v. Crosby, supra, concluded its opinion as follows:

"Though defendant was not prompted by malice or by any evil design, and meant only to exercise the privileges of citizen-

ship, he failed to show proper respect for the property rights and the personal feelings of plaintiffs when he opened his undertaking establishment in their midst. He was in the wrong when he encroached on the repose, the comfort, and the freedom of their homes, depreciated the value of their property, depressed their spirits, and weakened their power to resist disease. His business was not a necessity at the place selected by him. He equipped his funeral home at his peril, after he had been warned by plaintiffs of their objection. Under all the circumstances the injunction was properly allowed."

In some of the cases quoted from there was a city ordinance prohibiting the conduct or maintenance of an undertaking establishment or "funeral home" within a residential district, but in those cases the validity of the ordinance was made to rest upon the ground that such a business, when carried on in a strictly residential district, constituted a private nuisance, which it was within the competence of the municipality to abate in the exercise of its police power. The holdings in the cases cited, when carried to their logical conclusions, are to the effect that the conduct or maintenance of an undertaking establishment or "funeral home" in a strictly residential district constitutes a nuisance as a matter of law.

In addition to this, the evidence in the instant case clearly establishes that the plaintiffs were being deprived of the comfortable enjoyment of their homes to such an extent as to constitute a nuisance and warrant the trial court in enjoining the same.

While the undertaking business is not only lawful but indispensable, there is no justification or excuse for its seeking out and establishing itself in localities devoted exclusively to homes, where it not only materially detracts from the comfort and happiness of those who dwell there, but ruinously depreciates the values of their real estate as well.

The judgment of the trial court is affirmed.

PHELPS, LESTER, HUNT, CLARK, RILEY, and HEFNER, JJ., concur.