EUGENE ARTHUR and Others, Plaintiffs, *v.* MAURICE N. VIRKLER and Another, Defendants.

Supreme Court, Lewis County, July 26, 1932.

Cobb, Cosgrove, Herter & Wright [Delos M. Cosgrove and Loren E. Harter of counsel], for the plaintiff.

Perry G. Williams [Francis E. Cullen of counsel], for the defendants.

LEWIS, EDMUND H., J. The defendant Maurice N. Virkler for a period of eleven years prior to 1931 conducted an undertaking establishment in the business district of the village of Lowville, N. Y. On August 13, 1931, he and his wife purchased a private residence on Trinity avenue, and subsequently remodeled the structure into a " Home for Funerals," where he proposes to embalm dead bodies, hold them for identification when occasion demands, afford facilities for autopsies, conduct funeral services, and in general to perform all of those services incidental to the business of an undertaker. In connection with such business he also proposes to operate a day and night ambulance service.

Trinity avenue, between State street and Park avenue, has for many years been free from business establishments. Except for Trinity Church, located at the corner of State street and Trinity avenue, all of the abutting properties are devoted to residential purposes. In fact it may be said that the residents of Trinity avenue, by laying out and landscaping spacious lawns and keeping their properties in a high state of preservation, have developed and maintained this thoroughfare as a street of marked beauty.

The plaintiffs, whose residences are adjacent to or reasonably near the " Virkler Home for Funerals," seek to enjoin the defendants from continuing the use of the latters' property for the purposes mentioned above.

The record before the court fails to establish that the defendants' premises as remodeled and used up to the time of the trial are in any way unsanitary; nor is there proof that the air in and about the premises at any time is laden with noxious odors from the use of disinfectant chemicals incidental to the embalming of dead bodies. On the contrary, the proof shows that the defendants have conducted their undertaking establishment and are disposed to conduct it in the future, in accord with the best and most approved mortuary practice.

As to the ambulance service, the record contains no proof that any exceptional noise or confusion has occurred, although the defendants state that their purpose is to operate such service day and night. The ambulance, which is equipped with the usual

siren, is to be used for hospital service, and it may fairly be assumed will respond to emergency calls.

In support of their demand for injunctive relief, the plaintiffs have given proof that from the windows of their residences and as they walk about their grounds or pass defendants' premises going to and from their residences, they have frequently seen defendants' hearse and service wagon going in and out at various hours of the day and night, and can observe the transportation to and from defendants' place of business of caskets and funeral paraphernalia; that in the past the lawns around the homes of several of the plaintiffs have been used for various forms of outdoor entertainment, depending upon the season of the year; that by reason of the necessary traffic and activities incidental to the type of business conducted by the defendants, these forms of entertainment, which plaintiffs and their families are entitled to enjoy in the use of their properties, have been made unpleasant and have been abandoned; that the activities which the defendants admit they propose to conduct, including the operation of a day and night ambulance service, will be an almost constant reminder of mortality and that a resulting mental depression with consequent physical disorders will be caused to the plaintiffs and the various members of their households; that by reason of the use to which defendants propose to put their premises the rental value of plaintiffs' properties will be substantially diminished.

As I view the record, the question is presented whether the power of this court in equity may be invoked to restrain the defendants from operating an undertaking business and ambulance service in a strictly residential district when the only proof of resulting injury to the plaintiffs is the mental annoyance or depressing effect upon them and the members of their households, a loss of comfort and enjoyment in their residence properties and a diminution in the rental value thereof.

The court's attention has been called to no decision in the State of New York where this precise question has been determined. In 1893 the Court of Appeals considered the question whether an undertaking establishment was a nuisance within the terms of a restrictive covenant that no " trade or business [shall be] carried on upon said lots which shall be injurious or offensive to the neighboring inhabitants." The opinion was not decisive upon the question whether the defendants' use of the premises involved constituted a private nuisance, but turned upon the point whether such a use was prohibited within the restrictive language of the deed as an injurious or offensive business. While the statement may have been indecisive of the issues there presented, I quote in part

the language of Judge EARL which bears directly upon the subject of the alleged diminution in the rental value of plaintiffs' property in the case at bar: " People of ordinary sensibilities would not willingly live next to a lot upon which such a business is carried on. An ordinary person desiring to rent such a house as plaintiff's would not take her house if he could get one just like it at the same rent at some other suitable and convenient place. Indeed, her house would be shunned by people generally who could afford to live in such an expensive house.

" The courts can take judicial notice of the offensive character of such a business. Judges must be supposed to be acquainted with the ordinary sentiments, feelings and sensibilities of the people among whom they live, and hence in this case the learned judge, after the character of the business carried on by the Taylor Company had been proved, could have found, as matter of law, that it was in violation of the restriction agreement, without any further proof." (*Rowland* v. *Miller*, 139 N. Y. 93, 102.)

In approaching the determination of this question there are fundamental principles which must be considered. For instance, the extent or character of the injuries of which the plaintiffs complain cannot be determined by the effect produced upon those of unusual sensitiveness. We must judge the effect by the degree of discomfort which the conditions complained of would produce upon the normal person. The language of the Court of Appeals in *People* v. *Rubenfeld* (254 N. Y. 245, 248) defines the rule: " The test for all the senses, for sight as well as smell and hearing, has been the effect of the offensive practice upon the reasonable man or woman of average sensibilities. (*Baltimore & Potomac R. R. Co.* v. *Fifth Baptist Church*, 108 U. S. 317.)"

Another basic principle which we must recognize is that the alleged inconvenience or disturbance to the enjoyment by plaintiffs of their property rights cannot be fanciful or imaginary. It must be real and substantial. The law does not take cognizance of a mental effect standing alone — probably because it cannot be measured. The mental effect which prompts relief in equity must be one which lends itself to some extent to measurement and appraisal by reason of a concurrent invasion of property rights to be recognized as fact, not fancy, by the average person.

In considering this last rule it is of interest to note that with the changing social conditions which have complicated urban life, the law has given heed to the necessity of altering legal principles to meet that change. Take as an instance the attitude of the law toward æsthetics. Webster's New International Dictionary defines " æsthetics " as " The theory or philosophy of taste."

Bearing that definition in mind, and accepting the fact that the " philosophy of taste " must call for some reaction of the mind, we find a statement by Chief Judge CARDOZO in *People* v. *Rubenfeld* (*supra*, p. 248): " One of the unsettled questions of the law is the extent to which the concept of nuisance may be enlarged by legislation so as to give protection to sensibilities that are merely cultural or æsthetic." I do not interpret that statement as an expression of judicial doubt, but as a reminder that the question is still unsettled in this State whether " protection to the sensibilities " will be recognized in law. In this connection we find the statement by Chief Judge HISCOCK in *Matter of Wulfsohn* v. *Burden* (241 N. Y. 288, 300): " The Supreme Court of the United States has, however, gone so far as to approve in substance the views of the Massachusetts Supreme Court that æsthetic considerations might be considered as auxiliary of what thus far have been regarded by the courts as more effective and sufficient reasons. (*Welch* v. *Swasey,* 193 Mass. 364; *Welch* v. *Swasey,* 214 U. S. 91, 108.) "

In *State ex rel. Carter* v. *Harper* (182 Wis. 148) the opinion of the court, after discussing the effect of changed social conditions upon the law, states (p. 159): " The rights of property should not be sacrificed to the pleasure of an ultra-æsthetic taste. But whether they should be permitted to plague the average or dominant human sensibilities, well may be pondered." (See, also, opinion by Chief Judge POUND in *Perlmutter* v. *Greene,* 259 N. Y. 327.)

It is not my purpose in the determination of this action to depart from the basic principles to which reference has hereinbefore been made. I cite the above cases only to point out that while formerly, in the eyes of the law there was apparently a blind spot where mental effect standing alone was concerned, changed social conditions in urban centers have brought new vision upon the subject.

If I am correct in my statement of legal principles, it follows from the record before the court and I conclude that by moving their undertaking establishment from a business district into the midst of a district where for a long period of years only a church and private residences have existed was an illegal encroachment by the defendants upon the plaintiffs' property rights. It has rendered plaintiffs' residence properties physically uncomfortable, and accordingly is a private nuisance which equity will abate.

The injury is not one which is felt only by a hypersensitive person. The normal man is affected by the consciousness of death. It is not peculiar to the person of overwrought nerves or delicate taste to feel a physicial reaction in the presence of death or serious injury. True, some will react to greater extremes than others, but the important fact to us in the consideration of this question is

that the normal, reasonable man feels a physical reaction in such presence. If the occasion is near his home, the quiet enjoyment there, to which he is legally entitled, is adversely affected. It follows that when the symbols of death, which are the stock in trade of an undertaker, are frequently brought by the defendants before the eyes of the plaintiffs the true value of plaintiffs' properties as homes, as places of repose and comfort, will diminish.

It is not fanciful nor imaginary to conclude that a diminution in property values occurs by reason of the close proximity of the activities of an undertaker or ambulance service in disposing of the dead or injured. It is a fact which normal persons will recognize; it is real and substantial.

There apparently was no doubt upon this subject in the mind of Judge EARL when he stated: " People of ordinary sensibilities would not willingly live next to a lot upon which such a business is carried on." (*Rowland* v. *Miller, supra,* p. 102.)

I realize that judicial decisions upon this question in the various jurisdictions are widely divergent. In one class are those which hold the establishment of an undertaking business in a residential district to be an invasion of neighboring property rights which warrants injunctive relief. (*Cunningham* v. *Miller,* 178 Wis. 22; *Saier* v. *Joy,* 198 Mich. 295; *Dillon* v. *Moran,* 237 id. 130; *Beisel* v. *Crosby,* 104 Neb. 643; *Meagher* v. *Kessler,* 147 Minn. 182; *Osborn* v. *Shreveport,* 143 La. 932; *Brown* v. *City of Los Angeles,* 183 Cal. 783; *Hatcher* v. *Hitchcock,* 129 Kan. 88; *Densmore* v. *Evergreen Camp,* 61 Wash. 230; *Haan* v. *Heath,* 161 id. 128; *Jordan* v. *Nesmith,* 132 Okla. 226; *Bragg* v. *Ives,* 149 Va. 482; *Meldahl* v. *Holberg,* 55 N. D. 523; *Tureman* v. *Ketterlin,* 304 Mo. 221; *Leland* v. *Turner,* 117 Kan. 294.)

In the other class fall those decisions which refuse injunctive relief sought by residents whose property rights are claimed to be affected. (*Stoddard* v. *Snodgrass,* 117 Ore. 262; *Pearson & Sons* v. *Bonnie,* 209 Ky. 307; *Westcott* v. *Middleton,* 43 N. J. Eq. 478.)

Without attempting a detailed analysis of these many decisions, I quote the recently published statement on the subject in 3 Cooley on Torts ([4th ed. 1932] p. 180, § 435):

" § 435. Undertaking establishment. An undertaking establishment is not a nuisance *per se,* and by some courts it is held that even when located in an exclusively residential district, with the result that, because of sentimental repugnance on the part of those who might reside near it, property values in the vicinity would depreciate, such establishment would not be enjoined. *By what appears to be the weight of modern authority, however, it is held that the location of such a business in a residential district is sufficiently*

*objectionable to make it a nuisance.* Thus it has been stated: The inherent nature of an undertaking establishment ' is such that, if located in a residential district, it will inevitably create an atmosphere detrimental to the use and enjoyment of residence property, produce material annoyance and inconvenience to the occupants of adjacent dwellings, and render them physically uncomfortable, and in the absence of a strong showing of public necessity, its location in such a district should not be permitted over the protests of those who would be materially injured thereby.' "

In view of my conclusion a consideration of other points of law advanced by the plaintiffs in support of their demand for relief is not necessary.

The defendants gave proof upon the trial that they have expended $3,800 in renovating their property. This was competent as bearing upon the equities to be considered in their favor in this controversy. But the fact is also of record that even before they acquired title to their property they were notified that, so far as the law would permit, the plaintiffs would resist the maintenance of an undertaking establishment on Trinity avenue. Notwithstanding this notice and the objections filed with the village board of trustees when the defendants petitioned for a building permit, defendants chose to proceed with renovations which involved a considerable expense.

Under the judgment of this court the defendants will be restrained from conducting an undertaking business and ambulance service, or any business or activities usually incidental thereto, from their premises on Trinity avenue in the village of Lowville, N. Y.

Upon the stipulation of record in the case, plaintiffs have waived their demand for substantial damages. Accordingly the damages to which plaintiffs are entitled will be fixed at the nominal amount of one dollar.

Findings and judgment may be prepared accordingly.