## GRUBER v DODGE

1. NUISANCE—PERMANENT INJUNCTION—CHANGE OF CIRCUMSTANCES.

The trial court did not err in denying a motion by the defendant to dissolve a permanent injunction that limited the use of his airstrip to personal use after the less restrictive "private use" had been authorized by state and Federal regulatory agencies where those agencies considered only the services and safety aspects of the defendant's airstrip when reclassifying, the fact that the use might constitute a private nuisance was not known to them, and there was no adversary proceeding at which plaintiff was invited to present evidence of the nuisance character of the airstrip.

2. NUISANCE—PERMANENT INJUNCTION—CHANGE OF CIRCUMSTANCES —AIRPORT USE—RECLASSIFICATION.

The mere fact that defendant's airport was reclassified from "personal use" to "private use" was not such a material change in circumstances as to require the trial court to dissolve a permanent injunction limiting use of the defendant's airstrip to personal use, where the injunction was based on the determination that greater use than "personal use" had, in the past, created a nuisance.

3. NUISANCE—AIRPORT USE—FINDINGS OF FACT.

A finding that defendant's greater use of his landing strip by others constituted a nuisance with respect to plaintiff which deprived the plaintiff of the peaceful use and quiet enjoyment of his property for the reasons that defendant's runway ended near plaintiff's property, that if a plane took off when the surface was dry, dust and gravel were thrown in a substantial amount on to plaintiff's property, that a house on plaintiff's property was in close proximity to the runway, that large airplanes and a number of small airplanes using the runway created a nuisance because of the noise and general disturbances, and that some of the interferences related to cattle on

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 8 Am Jur 2d, Aviation §§ 4–6.
58 Am Jur 2d, Nuisances §§ 9, 229, 230.

plaintiff's property and a house occupied by tenants was not erroneous.

Appeal from Macomb, Walter P. Cynar, J. Submitted Division 2 December 12, 1972, at Lansing. (Docket No. 12624.) Decided February 21, 1973. Leave to appeal denied, 389 Mich 794.

Complaint by Peter Gruber against Charles J. Dodge for a permanent injunction to keep the defendant from using any airstrip on his property for the landing and taking off of aircraft. Judgment entered restricting the use of the airstrip to defendant's personal use. Defendant's motion to dissolve the permanent injunction denied. Defendant appeals. Affirmed.

*Mihelich, Carlson, Swick & Purdo,* for plaintiff.

*Dell, Shantz, Booker & Schulte,* for defendant.

Before: FITZGERALD, P. J., and McGREGOR and TARGONSKI,* JJ.

McGREGOR, J. Defendant is seeking the dissolution of restraining orders in the March 24, 1969 judgment of the trial court, enjoining his utilizing an airstrip on his property for any purposes other than his own personal use.

On October 3, 1966, Peter Gruber filed a complaint against the defendant, seeking to enjoin the defendant from using any airstrip on his property for the landing and taking off of aircraft. In a supplemental complaint filed July 11, 1968, Mr. Gruber alleged that he owned 130 acres in Macomb County upon which he annually raised 50 to 100 black Angus beef cattle; that he had been

---

* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

raising cattle in this manner for over 25 years and
it was his principal means of livelihood; that the
defendant owned property immediately adjacent to
plaintiff's farm that was perpendicular to it; that
some seven years before, the defendant had begun
flying and used his land as an airstrip; that the
great noise and vibrations of the plane stampeded
plaintiff's cattle, causing damage to them and
surrounding animals and property; that at the
time he objected to the defendant's activities, and
the defendant ceased such activities; that he was
presently again using his property as an airstrip;
that after plaintiff filed suit on October 3, 1966, a
hearing was held, on October 17, 1966; and that
since the hearing the defendant had greatly en-
larged his activities by permitting various and
sundry numbers of aircraft to use his airstrip for
takeoff and landing, by accepting charter flights
and hauling freight, and by advertising a flying
service and lessons, all in violation of the "per-
sonal use" concept, permitted by MCLA 259.89;
MSA 10.189, and without certificates from the
Department of Aeronautics pursuant to MCLA
259.86–259.88; MSA 10.186–10.188. Mr. Gruber
also alleged that the defendant's activities consti-
tuted a nuisance and he asked for a permanent
injunction.

A five-day trial was held in October, 1968, and
an opinion issued on October 30, 1968, which held
that the proof did not demonstrate a public nui-
sance against the defendant for his individual
operation of a plane at this time, but that larger
airplanes and the increase of smaller planes other
than the defendant's had created a nuisance be-
cause of noise and general disturbance which de-
prived the plaintiff of the peaceful use and quiet
enjoyment of his property. The use of the Dodge

airstrip was limited to the defendant's personal use.

The judgment, entered March 24, 1969, enjoined the defendant from permitting anyone else to use his airstrip, from enlarging it, and from giving flying lessons and hauling passengers. He was also clearly to mark his airstrip warning aircraft not to land there. No appeal was taken from that decision. No transcript of the trial was filed in this Court, presumably because the case was not appealed and, therefore, the judgment of the trial court was binding on the parties.

On June 3, 1970, the defendant filed a motion, seeking to have Leona Gruber substituted as plaintiff, because she was now the owner of the Gruber farm, her husband having died, and seeking a dissolution of the permanent injunction. The motion alleged that there had been a material change of circumstances and that it was no longer equitable to limit the use of the defendant's airstrip to "personal use". The alleged material changes were (1) the airstrip had been reclassified by the State of Michigan for use as a "Class D" airport, which provides for much broader use than "personal use", and (2) the Federal Aviation Administration had reclassified the defendant's airstrip from "personal use" to "private use" which permits a greatly expanded usage. By supporting affidavit, the defendant alleged that he had totally discontinued the use of the airstrip which was the subject of this lawsuit and, in June, 1969, he had constructed a totally new landing strip which now has an approach path which avoided the plaintiff's property.

Plaintiff's answer to the above motion included the allegation that the defendant had violated the terms of the judgment by (1) permitting other

planes to land on the airstrip, (2) by installing a new and larger runway, and (3) by using an approach pattern closer to the residence of the plaintiff.

Defendant's reply to those allegations was that he had not violated the provisions of the judgment, because it did not restrict him from installing a new runway; further, defendant stated that the plaintiff had no standing to complain of the new runway because Peter Gruber, in violation of state and Federal law, and in a wilful attempt to cause physical harm to the defendant, installed wooden poles on the east end of the defendant's original east-west runway of such height as to cause the defendant serious concern for his safety through the continued use of that runway to such an extent that he abandoned the runway and constructed his present north-east, south-west runway. The defendant had not sought judicial relief at the time the plaintiff installed the wooden poles.

A hearing on the motion was held, commencing June 29, 1970. Due to its length and the busy court docket, the hearing was not completed until June 28, 1971. In an opinion dated August 9, 1971, the court ordered the substitution of Leona Gruber as plaintiff, and the removal by her of the wooden poles on the west end of the Gruber boundary which bordered the east-west landing strip. The court denied the defendant's motion to dissolve the restraining order, saying that to allow the defendant to increase air traffic by others on his new runway would create a greater nuisance to the plaintiff than ever existed before.

Defendant appeals this decision.

The first issue on appeal is whether the trial court erred in denying a motion by the defendant

to dissolve the permanent injunction, limiting the use of his airstrip, after greater use had been permitted by state and Federal regulatory agencies.

Defendant contends that, since his airport has been reclassified from a "personal use" airport to a "private use" airport by the Federal Aviation Administration and the Michigan Aeronautics Commission, the injunction prohibiting the use of his airport by others should be dissolved.

The plaintiff maintains that otherwise lawful activity can still be a nuisance where the activity is permissive only. In *Rockenbach v Apostle,* 330 Mich 338, 343, 344 (1951), the Court stated:

"This case presents one circumstance which apparently has not been before the Court for consideration, in determining whether an undertaking establishment may be maintained in a district claimed to be residential. A zoning ordinance of Muskegon Heights classifying block 94 as "B" residential and defining the use which might be made of lots in that block, permits funeral homes, provided that consent of five-sevenths of the council be obtained and that certain off-street parking be provided. It is conceded that the defendants have obtained the requisite consent of the council, and have made the necessary provisions for off-street parking. The precise question is, what bearing does this have upon the outcome of a case where the residents of this district seek to enjoin the use of lots in block 94 for a funeral home, on the ground of nuisance? Decisions from other jurisdictions involving undertaking establishments permitted by zoning ordinances in residential districts are at such variance as to facts and circumstances that none can be said to be squarely in point. Nor are such cases in agreement as to the law. (Citations omitted.)

"The weight of authority is to the effect that an ordinance which allows the establishment or maintenance of a funeral home or undertaking establishment in a district zoned either for residential or commercial

purposes is permissive only, and not controlling as to whether such undertaking establishment would constitute a nuisance which might be enjoined by an equity court. However, proof of the existence of such a zoning ordinance is admissible as evidence of the character of the district, and bearing on the question of nuisance. A nuisance will not be upheld solely on the ground that it has been permitted by municipal ordinance." (Citations omitted.)

See also *Smith v Western Wayne County Conservation Association,* 380 Mich 526, 537 (1968).

Here, the fact that that type of use is permitted would not prevent the use from being a nuisance under certain circumstances. This is particularly emphasized in the present case, where the defendant has not even alleged that he notified the state and Federal regulatory agencies that his airstrip had been determined by a state circuit court to be a nuisance before obtaining reclassification of his airstrip by those agencies.

The airport regulatory agencies considered services and safety aspects of the defendant's airstrip when considering reclassification, and the fact that it might constitute a private nuisance was not known to them when they granted the reclassification. There was no adversary proceeding at which plaintiff was invited to present evidence of the nuisance character of the airstrip.

Further, there was testimony that an airport owner does not have to notify the Federal Aeronautics Administration or be licensed by the state, in order to change the classification of his airport from "personal" to "private use". It is the opinion of this Court that the mere fact that the defendant's airport was reclassified to "private use" was not such a material change in circumstances as to require the trial court to dissolve the permanent injunction limiting use of the defendant's airstrip

to personal use, since the injunction was based on the determination that greater use than "personal use" had, in the past, created a nuisance.

The second issue on appeal is whether the trial court erred in holding that use of the defendant's airport by others constituted a nuisance.

The defendant contends that the trial court held that use of his airstrip for "private" rather than "personal" use created a nuisance per se, and that this was error. However, the issue of whether the defendant's use of his airstrip constituted a nuisance per se was never before the trial court, and the trial court made no such determination. Rather, after a lengthy hearing and a personal viewing of the real estate involved, the court found that the defendant's runway ended in close proximity to the plaintiff's property, that if a plane took off when the surface was dry, dust and gravel were thrown in a substantial amount on to the plaintiff's property, that a house on the plaintiff's property was in close proximity to the runway, and that large airplanes and a number of small airplanes using the runway created a nuisance because of the noise and general disturbances, which deprived the plaintiff of the peaceful use and quiet enjoyment of the property. The court also specifically stated that some of the interferences related to cattle on plaintiff's property and a house occupied by tenants.

"On the other hand, even though an airport is not a nuisance *per se,* it may become a nuisance or be responsible for one if the airplanes using it cause a nuisance or a continuing trespass.

\*   \*   \*

"Airplanes may be flown at proper heights over the land below and even though there may be noises and annoyances caused thereby, they will be considered

*'damnum absque injuria'.* If planes are flown at such heights as are prescribed by the authorities, as a rule they will not be enjoined. However, airplanes may not land or take off at low altitudes and in such close proximity to the property of others so as to cause a nuisance or a continuing trespass." *Warren Township School Dist v Detroit,* 308 Mich 460, 470, 478 (1944).

Here, the facts fully support the trial court's finding that defendant's greater use of his landing strip constituted a nuisance with respect to plaintiff. There was no error in the trial court's determination that the use of defendant's airport by others constituted a nuisance.

Affirmed.

All concurred.