No. 25,614.

## C. A. LELAND et al., *Appellees*, v. W. E. TURNER and CHESTER TURNER, Partners, etc., *Appellants*.

### SYLLABUS BY THE COURT.

1. INJUNCTION — *Undertaking Establishment* — *Located in Residential Section of City—Action to Enjoin Such Establishment May Be Maintained by Private Citizens of Such Section.* Private citizens who own and occupy homes in a residential section of a city have an interest so different in character as well as in degree from the general public in the threatened and impending intrusion of an undertaking establishment in close proximity to their homes that they may maintain an action to enjoin such establishment as a private nuisance.

3. SAME — *Finding of Trial Court Sustained by Evidence.* The trial court's finding of fact that defendants' undertaking establishment was located in a strictly residential district was supported by evidence which is conclusive on appeal.

3. SAME — *Judgment Making the Restraining Order Perpetual Affirmed.* In a suit for an injunction against an undertaking establishment which had intruded into a residential district of a city, judgment as prayed for was entered against defendants pursuant to the following findings and conclusions of the trial court:

"That while an undertaking establishment of the character proposed to be operated by the defendants is not a nuisance *per se,* its maintenance at the intersection of two principal residence streets in a residential district of a city is a nuisance as to owners of nearby property, whose property will be reduced in value by the maintenance and conduct of such business and whose comfort, repose and enjoyment of their homes will be materially diminished by the mental depression and distress caused by the constant going and coming of hearses, the not infrequent taking in and out of dead bodies, the frequent funerals, thoughts of the unknown dead in the morgue, the thought of autopsies, embalming and other matters commonly associated in the mind of the average person with a morgue, including a conspicuous sign, all of which to the extent that one's power of resistance to disease is lowered by mental depression and distress, render such persons, including the plaintiffs, more susceptible to disease and deprive the plaintiffs and their homes of the comfort, repose and enjoyment to which they are entitled, and that by reason of the foregoing the plaintiffs are entitled to a permanent injunction.".

*Held,* not error.

Appeal from Butler district court; ALLISON T. AYRES, judge. Opinion filed December 6, 1924. Affirmed.

*Robert C. Foulston, A. M. Ebright, George Seifkin, Sidney Foulston,* all of Wichita, *B. R. Leydig, K. M. Geddes,* and *E. W. Grant,* all of El Dorado, for the appellants.

*C. A. Leland, L. J. Bond, J. B. McKay,* and *C. L. Harris,* all of El Dorado, for the appellees.

The opinion of the court was delivered by

DAWSON, J.:   This was a suit by private citizens to enjoin the maintenance of an undertaking establishment in a residential section of the city of El Dorado.

For many years the defendants had pursued the occupation of embalmers and undertakers in El Dorado.   Their establishment was conducted in the business section of the city, but the defendant, W. E. Turner, owned a tract of ground at a corner of Pine and Washington streets, on which was situated a barn and garage where defendants kept their hearses, ambulances, and other funeral equipment.   Defendants removed the barn and garage, and applied to the city government for a permit to erect thereon a funeral home and morgue.   A city ordinance of questioned validity forbade the establishment of "undertaking establishments, morgue or dead houses," etc., in the residential districts of the city.   Defendants' application for a permit was refused, and they brought an action in mandamus to compel the city to issue it.   That cause proceeded to judgment in favor of the city.   Later defendants applied for and received a permit to erect a private residence of two stories and a basement on the same premises.   A building which to all outward appearance was a typical private residence of the better sort was erected pursuant to such permit; its true character was kept secret by defendants while it was being constructed; but upon completion it was revealed that it was specially designed for the business of undertaking—an embalming workroom in the basement and a chapel for funeral services on the main floor, and for a private residence on the second floor only.   Defendants set about the prosecution of their business of embalming, undertaking and funeral conducting at this new establishment, and this lawsuit followed.

Issues were joined, testimony was heard at length, and judgment was entered for plaintiffs.   The trial court's findings and judgment read:

"That while an undertaking establishment of the character proposed to be operated by the defendants is not a nuisance *per se*, its maintenance at the intersection of two principal residence streets in a residential district of a city is a nuisance as to owners of nearby property, whose property will be reduced in value by the maintenance and conduct of such business and whose comfort, repose and enjoyment of their homes will be materially diminished by the mental depression and distress caused by the constant going and coming of hearses, the not infrequent taking in and out of dead bodies, the frequent

funerals, thoughts of the unknown dead in the morgue, the thought of autopsies, embalming and other matters commonly associated in the mind of the average person with a morgue, including a conspicuous sign, all of which to the extent that one's power of resistance to disease is lowered by mental depression and distress, render such persons, including the plaintiffs, more susceptible to disease and deprive the plaintiffs and their homes of the comfort, repose and enjoyment to which they are entitled, and that by reason of the foregoing the plaintiffs are entitled to a permanent injunction.

"It is therefore by the court ordered and adjudged and decreed, that the defendants and each of them and their agents, servants and employees are hereby permanently enjoined and restrained from equipping or in any way operating or maintaining a funeral home or morgue or mortuary or undertaking establishment on the [premises] described."

Defendants assign various errors, first urging that plaintiffs, as private citizens, had no right to maintain this action. The argument is made that the maintenance of a funeral home and morgue on defendants' premises would not cause plaintiffs to suffer any annoyance different in kind from that sustained by the general public, and consequently under familiar precedents they could not maintain this action. Under the evidence the court is disinclined to sustain this contention. The maintenance of an undertaking establishment and funeral home at the corner of Pine and Washington streets is no annoyance to the entire community of El Dorado. The business is not a nuisance *per se*. Such an institution serves an invaluable need in modern life. But it may well be that an institution, notwithstanding its existence is a necessity, may be of such a disagreeable character that it should not be located in a residential quarter of a city. The people of the city at large may have no grievance, actual or theoretical, at its establishment in a particular locality, but the people who reside in the immediate vicinity may have just ground of complaint at its existence. This proposition has been frequently noted in our own cases and those of other jurisdictions. In *Stotler v. Rochelle*, 83 Kan. 86, 109 Pac. 788, it was held that the establishment of a cancer hospital in a residential neighborhood, in the near proximity of dwellings, might be enjoined at the instance of a private citizen owning and occupying adjacent property. In the opinion it was said:

"Whether in a given case the obligation so to use one's own property as not to injure another's has been or is about to be so far transgressed as to justify the interference of a court is a question to be determined as a matter of reason, fairness and justice under all the circumstances. The injury need not extend beyond annoyance, if in view of all the facts it is unreasonable. . . .

"The question is not whether the establishment of the hospital would place

Leland v. Turner.

the occupants of the adjacent dwellings in actual danger of infection, but whether they would have reasonable ground to fear such a result, and whether, in view of the general dread inspired by the disease, the reasonable enjoyment of their property would not be materially interfered with by the bringing together of a considerable number of cancer patients in this place. However carefully the hospital might be conducted, and however worthy the institution might be, its mere presence, which would necessarily be manifested in various ways, would make the neighborhood less desirable for residence purposes, not to the over-sensitive alone, but to persons of normal sensibilities." (pp. 88, 91. See, also, *Winbigler v. Clift,* 102 Kan. 858, 172 Pac. 537; *Densmore v. Evergreen Camp No. 147,* 61 Wash. 230, 31 L. R. A., n. s., 608.)

In 20 R. C. L. 455, it is said:

"Whether the business of preparing dead bodies for burial is to be deemed a nuisance depends on the locality in which it is carried on and the methods employed by the proprietor thereof. Without doubt an undertaking establishment is not a nuisance *per se,* even when located in a residence section of a city. But it has been held that the maintenance of an undertaking establishment in a residence part of a city within a few feet of neighboring residences may be enjoined by their owners as a nuisance, in view of the probable interference with the comfortable enjoyment of their property by the depressing effect of the reminders of mortality, and the escape of noxious odors and gases from the chemicals used in the business; and according to this view it is immaterial that the owner of the business intends to reside in the upper stories of the building. Upon a somewhat similar principle it has been held that an undertaking establishment in which human dead bodies are prepared for burial or other sepulture, and sometimes subjected to embalming and post-mortem examination, is a business 'injurious or offensive to the neighboring inhabitants,' within the terms of a restrictive agreement, although it may not constitute a legal nuisance."

It stands to reason that such should be the law. While equity does not concern itself with any and every petty annoyance incident to the congested life of a modern community (*Ross v. Butler,* 19 N. J. Eq. 294), yet equitable relief will be granted at the instigation of a private individual upon a sufficient showing that the persistent misconduct of another or the use to which another has devoted his property is such as to cause the aggrieved party positive and serious annoyance, mental or physical; and it hardly needs evidence or argument (although neither is wanting in this case) to demonstrate that people of ordinary sensibilities whose homes are in close proximity to a place where dead bodies are received at all hours of the day or night, where the awesome business of embalming is conducted, where hearses come and go, where funeral processions assemble, where funeral sermons are preached and dirges sung, would be sub-

jected to annoyances of a peculiarly depressing and aggravating character. Persons subjected to such constantly recurring incidents and dismal circumstances could not enjoy their homes in peace and quietude; the laughter and play of their children about their own dooryards would seem heathenish and unfeeling in such a doleful environment. Social and family gatherings in residences so placed would be a pathetic caricature of happiness and enjoyment. (*Saier v. Joy*, 198 Mich. 295, L. R. A. 1918A, 825, and annotations; *Cunningham v. Miller*, 178 Wis. 22, 23 A. L. R. 739 and annotations; *Tureman v. Ketterlin*, [Mo.] 263 S. W. 202 and citations.)

In *Ross v. Butler*, supra, it was said:

"The law takes care that lawful and useful business shall not be put a stop to on account of every trifling or imaginary annoyance, such as may offend the taste or disturb the nerves of a fastidious or over-refined person. But, on the other hand, it does not allow anyone, whatever his circumstances or condition may be, to be driven from his home, or to be compelled to live in it in positive discomfort, although caused by a lawful and useful business carried on in his vicinity. The maxim, *sic utere tuo ut alienum non lœdas,* expresses the well-established doctrine of the law." (p. 298.)

In *Saier v. Joy*, supra, the supreme court of Michigan said:

"We think it requires no deep research in psychology to reach the conclusion that a constant reminder of death has a depressing influence upon the normal person. Cheerful surroundings are conducive to recovery for one suffering from disease, and cheerful surroundings are conducive to the maintenance of vigorous health in the normal person. Mental depression, horror and dread lower the vitality, rendering one more susceptible to disease, and reduce the power of resistance. There is an abundance of testimony in this record confirmatory of this, and it is a matter of common knowledge. The constant going and coming of the hearse . . . the not infrequent taking in and out of dead bodies; the occasional funeral with its mourners and funeral airs, held in the part of the house designed for a chapel; the unknown dead in the morgue, and the visits of relatives seeking to identify them; the thought of autopsies, of embalming; the dread, or horror, or thought, that the dead are or may be lying in the house next door, a morgue; the dread of communicable disease, not well founded, as we have seen, but nevertheless present in the mind of the normal layman—all of these are conducive to depression of the normal person; each of these is a constant reminder of mortality. These constant reminders, this depression of mind, deprive the home of that comfort and repose to which the owner is entitled." (p. 300.)

The court is bound to hold that plaintiffs, as private citizens, being specially and peculiarly affected and concerned, had a right to maintain this action.

Defendants also contend that defendants' business establishment was not located in a strictly residential district. That point in-

·volves a question of fact determinable on the evidence, and was mainly for the trial court to decide. It cannot be denied that there was *some* evidence to that effect—a good deal of it, indeed. Among the plaintiffs were all defendants' closest neighbors on the north, south, east and west; except at a short distance to the eastward where the business district begins, the only edifices in the immediate vicinity of defendants' premises are domestic residences and churches. We think the trial court's finding of fact on this point will have to stand. (*Wood v. Davis,* 12 Kan. 575, syl. ¶ 2; *Farney v. Hauser,* 109 Kan. 75, 83, 198 Pac. 178.)

Counsel for defendants make a painstaking analysis of most of the recorded "funeral home" cases, and argue therefrom that where injunctions have been granted they were chiefly based on a showing of physical discomforts to the complaining parties, such as unwholesome odors during embalming and the liability of sickness and disease to result therefrom, or the proved impossibility of keeping the premises free from flies, and that offensive odors did or would arise from the dissection of bodies. We note that an injunction was denied in *Westcott v. Middleton,* 43 N. J. Eq. 478, where it was held that to constitute a nuisance the injury must be physical as distinguished from one purely imaginative.

In that case, however, the controlling facts are apparently summarized in the following excerpt from the court's opinion:

"What has been disclosed by the proofs? These facts: Mr. Westcott and the defendant have lived side by side, in these same houses, for about eleven years. During all this time the latter has carried on this business of burying the dead in about the same open and unpretentious manner that he now does. There is no evidence that Mr. Westcott or any other person has ever been afflicted by reason of the defendant's occupation. Indeed, nothing has been attempted in that direction. Yet it is admitted that this trade has been and is carried on by the defendant in the midst of the most populous part of the city of Camden." (p. 486.)

Although the opinion in that case contains some views with which this court does not agree, yet starting with the potent fact that the situation of the parties had continued unchanged and unchallenged for eleven years, we might well have reached the same conclusion as the New Jersey court.

We have also noted that the California court of appeals, in *Dean v. Powell Undertaking Co.,* 55 Cal. App. 545, disapproved a judgment granting an injunction in a case somewhat similar to the one at bar, except that in addition to plaintiffs' residences there were

also in the neighborhood some business establishments. There may also be a basis for distinction in the cases because of a general policy on the part of the California legislature to write into express statutes the whole body of substantive law, and in the opinion the court says that the doctrine announced in such cases as our own cancer hospital case, *Stotler v. Rochelle*, 83 Kan. 86, 109 Pac. 788, 29 L. R. A., n. s., 49, is regulated by statute, and section 3479 of the civil code of California is cited. (Kerr's Cyclopedic Codes of California, 1920, Civil Code, Part Two.) But we must adhere to the principles announced in our own cases like *Stotler v. Rochelle*, supra, even if they cannot always be reconciled with the conclusions of some of the learned courts of other jurisdictions. On the present question we think we go with the greater weight of authority and the better reasoning. The recent Missouri case of *Tureman v. Ketterlin*, supra, was identical in all substantial respects with the one at bar. There, as here, the action was brought by private citizens owning residences near to the proposed undertaking establishment. There, as here, there was a city ordinance of questioned but undetermined validity. There, as here, it was shown that—

"While the communication of disease and the emission of noisome odors from an undertaking establishment in which proper methods of sanitation are employed are possible, the probabilities of such eventualities are extremely remote. On the other hand, there was evidence equally conclusive that constant reminders of death, such as are furnished by the presence of an undertaking establishment and its visible activities, have a depressing effect on the mind of the average person, weakening his physical resistance and rendering him more susceptible to contagion and disease, and that the values of homes in a residence district, both sales and rental, immediately depreciate whenever an undertaking establishment makes its appearance therein, because there is such a general aversion to a continuing atmosphere of death and mourning that people will not live in it if they can avoid it. . . .

"Plaintiffs' evidence tended to show that, if the relief they sought was denied them, their financial loss, and that of several of them individually, would greatly exceed in value the sum of $7,500. There is no question, therefore, but that we have jurisdiction of this appeal." (pp. 203, 205.)

The Missouri supreme court cited all the principal cases which hold that an undertaking establishment is or may be a private nuisance to the resident owners of adjacent property, and ignored the New Jersey and California cases which we have noted above; and the judgment of the trial court granting plaintiffs the relief prayed for was sustained.

There is no error in this record, and the judgment is affirmed.