J. W. BEVINGTON et al., Appellees, v. W. F. OTTE et al., Appellants.

No. 43838.

510

MAY 4, 1937.

Turner & Turner and Keenan, Clovis & Sar, for appellees.

Willis A. Glassgow, Stephens, Thornell & Millhone and Wilson & Wilson, for appellants.

DONEGAN, J.—This action is brought by the plaintiffs to enjoin the defendants from establishing and maintaining a funeral home and from conducting funerals upon premises owned by them on North Fifteenth street in the city of Clarinda, Iowa. The plaintiffs are all owners of property in the immediate vicinity of the property of the defendants. In their petition the plaintiffs allege that the block in which the defendants are about to establish such funeral home, and the block across the street and to the east thereof, are in a purely residential district, four blocks north of the business district of the city of Clarinda; that there are no business establishments on said street between the business district and the property of the defendants; that the maintenance of such funeral home will cause traffic congestion in the adjoining streets; that the receiving of dead bodies, the storing, embalming and preparing the same for burial, the coming and going of many people, the assembling of crowds, and the congestion of traffic on the street and on the defendants' premises, and the conducting of funeral services in said funeral home will annoy and produce a depressing effect upon plaintiffs and their families, and will seriously interfere with the quiet and peaceable possession and enjoyment by plaintiffs and their fam-

ilies of their homes and premises; that the establishment and maintenance of said funeral home would cause the properties of said plaintiffs to greatly depreciate in value, and would cause plaintiffs irreparable injury; and that they have no adequate remedy at law.

For answer the defendants admit that the defendant, W. F. Otte, is engaged in the carrying on of an undertaking business in the city of Clarinda, Iowa, and that the defendant, Alma Otte is a partner in said business; that the premises owned by them is their residence property and is located in a strictly residence district; that the plaintiffs are the owners of property and residents in the said district, as alleged in the petition; that defendants have taken some steps toward improving their house and yard, but not for the purpose of making a funeral home and morgue and for the purpose of holding funerals therein, and they deny that they are preparing to maintain same as a funeral home and morgue. Defendants deny that the conducting of funerals on their premises would cause traffic congestion in the adjoining streets, that they have any intention of storing and embalming dead bodies, preparing the same for burial, or holding funerals generally in connection with said premises; deny that they intend to assemble crowds on their premises; deny that the conducting of funerals thereon would have a depressing effect upon plaintiffs and their families; and deny that the conducting of funerals as contemplated by them would cause the properties of plaintiffs to greatly depreciate in value. Further answering, defendants allege that the defendant Alma Otte purchased the property for the primary purpose of a residence for herself and family; that they are residing on said premises and expect to continue to reside there; that the defendants own a place of business in the business section of said city of Clarinda where they keep and intend to keep all necessary supplies for preparing dead bodies for burial, including caskets and vaults, and where they embalm and prepare dead bodies for burial and intend to continue doing so in the future; that they have a chapel in said store building from which funerals are conducted; that most of the funerals conducted by them are from the homes of deceased persons or their relatives or from churches; that occasionally friends of the defendants desire to have a funeral in a home and that, in such cases, defendants plan to conduct such funerals in their home; that such funerals will be infrequent,

probably not more than two or three a year, and will be held in the living rooms of defendants' home; that defendants do not intend to have separate rooms set aside or to have a commercial funeral home or morgue on the said premises; that, in case of such funerals held on said premises of the defendants, they have sufficient parking places on the driveways in the back yard of said premises to park all cars that would assemble for such funerals, and there will be no congestion of traffic on the streets.

Upon the trial of the case the trial court found in favor of the plaintiffs and entered a decree permanently enjoining the defendants from establishing or maintaining a funeral home on the premises herein involved, from conducting funerals therefrom, from receiving and discharging dead bodies therefrom, from embalming dead bodies thereon, and from establishing or maintaining a morgue on said premises. From this decree the defendants appeal.

The facts are that the plaintiff, J. W. Bevington, lives immediately south of the defendants' premises, and the plaintiff, Baumgarten, immediately north thereof. The plaintiffs, Swanson, Brooks, Annan, and McNeal, live in the block across the street and east of the block in which the properties of the plaintiffs, Bevington and Baumgarten, and of the defendants are situated. The plaintiff, Mrs. J. D. Palmer, lives directly west of and adjoining the property of the defendants. Her property faces west on Sixteenth street and there is no alley between it and the defendants' property. All of the plaintiffs are the owners of the properties in which they live, and most of them have owned and lived in these properties for several years. The property of the defendants was formerly owned by Herman Otte, by whom it was occupied as a residence, and it was acquired by the defendants in July, 1935. Shortly after acquiring this property the defendants made some changes therein and took some steps toward making use of said property as a funeral home from which funerals would be conducted in connection with the business owned and operated by them. The defendants had for some time been engaged in the furniture business in Clarinda and, in connection with this business, they also operated an undertaking business. The property of the defendants here in question has a frontage of 65 feet on the west side of Fifteenth street and extends east and west 150 feet. The south side of the main portion of defendants' house is approximately 35 feet from the

north side of the residence of the plaintiff, Bevington, but the roof of a porch extends over a driveway on the south side of defendants' house and is within about 19 feet of the north side of the Bevington residence. A driveway, which enters near the north line of defendants' property, extends westward to and around the rear of the house and then eastward along the south side of the house to Fifteenth street, passing under the porch above referred to. It appears from the evidence that on the south side of defendants' house, where this driveway passes under this porch roof, the defendants constructed a platform, onto and from which the bodies which were to be buried from the funeral home were to be unloaded and loaded. The north side of the defendants' house is approximately 44 feet from the south side of the main portion of the Baumgarten residence. The width of Fifteenth street from property line to property line is 80 feet, and the distance between the defendants' property and the residences of the plaintiffs living on the east side of the street varies according to the location of said residences as to being directly opposite or north or south of the property of the defendants. The evidence shows without dispute that the entire district in which the properties of plaintiffs and defendants are located is a purely residential district, and that there is no business establishment of any kind on Fifteenth street nearer than the business section of Clarinda, which is four or five blocks from the property of the defendants.

The evidence introduced in behalf of the plaintiffs was to the effect that the establishment and maintenance of a funeral home on the defendants' property would result in annoyance to the plaintiffs, because of the proximity of said funeral home to their respective residences, and because of the congestion of traffic and the gathering of crowds in attendance upon funerals and the noises incident thereto; that the receiving of dead bodies upon said premises, the unloading, loading, storing, embalming and preparation of same for burial, together with the funeral music, dirges and sermons in connection with funerals, which would be heard by the plaintiffs in their residences, would have a depressing effect upon the plaintiffs and the members of their families and would interfere with the quiet and peaceable possession and enjoyment by them of their homes and premises. Evidence was also introduced in behalf of the plaintiffs tending to show that the establishment of a funeral home would cause a

depreciation in their properties varying from 10 to 50 per cent, according to the proximity of the respective properties to the property of the defendants.

The defendants' evidence tended to show that it was not their intention to use their property for the general purpose of carrying on a funeral home and holding all, or even a considerable number, of the funerals conducted by them on these premises; that it was their intention to occupy the said premises as a home, and that the only funerals that would be conducted therefrom would be in cases where friends of the defendants, who had no residence suitable for the holding of a funeral, would desire such funeral to be conducted from a funeral home instead of from a church or from the downtown place of business of the defendants; and that, by far the greater number of funerals conducted by the defendants would not be conducted from these premises. They also introduced some evidence tending to show that the use which they intended to make of the premises would not cause any depreciation in the properties of the plaintiffs.

The courts have not always been agreed as to when an undertaking establishment or funeral home constitutes a nuisance. It seems well established by authority that a funeral home or undertaking establishment is not a nuisance per se, but that it may become a nuisance under certain circumstances. While some courts still hold that an undertaking establishment or funeral home, even in a residential section, is not a nuisance, we think the trend of authority is clearly to the contrary. As said in Tureman v. Ketterlin, 304 Mo. 221, 263 S. W. 202, 204, 43 A. L. R. 1155:

"An undertaking establishment is not a nuisance per se. The business of preparing dead bodies for burial is not only lawful but indispensable. It may become a nuisance, however, from the manner in which it is conducted or because of the place at which it is maintained, and it is very generally held to be such when it intrudes itself into a strictly residential district. Beisel v. Crosby, 104 Neb. 643, 178 N. W. 272; Densmore v. Evergreen Camp, 61 Wash. 230, 112 Pac. 255, 31 L. R. A. (N. S.) 608, Ann. Cas. 1912B, 1206; Saier v. Joy, 198 Mich. 295, 164 N. W. 507, L. R. A. 1918A, 825; Meagher v. Kessler, 147 Minn. 182, 179 N. W. 732; Osborn v. Shreveport, 143 La. 932, 79 So.

542, 3 A. L. R. 955; Goodrich v. Starrett, 108 Wash. 437, 184 Pac. 220; Cunningham v. Miller, 178 Wis. 22, 189 N. W. 531, 23 A. L. R. 739. The essential ground of such holding is that the maintenance of an undertaking establishment in a residence district tends to destroy the comfort, well-being, and the property rights of the owners of homes therein.''

In that case the court refers in its opinion to the statement made by the supreme court of Michigan in Saier v. Joy, 198 Mich. 295, 164 N. W. 507, 508, L. R. A. 1918A, 825, which is as follows:

''We think it requires no deep research in psychology to reach the conclusion that a constant reminder of death has a depressing influence upon the normal person. Cheerful surroundings are conducive to recovery for one suffering from disease, and cheerful surroundings are conducive to the maintenance of vigorous health in the normal person. Mental depression, horror, and dread lower the vitality, rendering one more susceptible to disease, and reduce the power of resistance. There is an abundance of testimony in this record confirmatory of this, and it is a matter of common knowledge. The constant going and coming of the hearse; * * * the not infrequent taking in and out of dead bodies; the occasional funeral, with its mourners and funeral airs, held in the part of the house designed for a chapel; the unknown dead in the morgue, and the visits of relatives seeking to identify them; the thought of autopsies, of embalming; the dread, or horror, or thought, that the dead are or may be lying in the house next door, a morgue; the dread of communicable disease, not well founded, as we have seen, but nevertheless present in the mind of the normal layman—all of these are conducive to depression of the normal person; each of these is a constant reminder of mortality. These constant reminders, this depression of mind, deprive the home of that comfort and repose to which its owner is entitled.''

In an annotation in 87 A. L. R., beginning at page 1061, the editor, at page 1062, says:

''The greater weight of recent authority is to the effect that the establishment and operation of an undertaking business in a purely residential section, under circumstances which would cause a depressed feeling to the families in the immediate neigh-

borhood, and a constant reminder of death, appreciably impairing their happiness, or weakening their power to resist disease, and depreciating the value of their property, constitutes a nuisance.''

This statement is supported by the citation of authorities from Alabama, Arkansas, Indiana, Kansas, Maryland, Michigan, Missouri, New York, North Dakota, Oklahoma, Texas, Virginia, and Washington. This volume of A. L. R. was issued in 1933, and the annotation to which we refer was in connection with the case of Kirk v. Mabis et al., a decision of this court, which appears in 215 Iowa 769, 773, 246 N. W. 759, 761. Appellants appear to place considerable stress upon the holding of this court in that case. In that case, however, the funeral home was not established in a purely residential section, and the decision of this court was controlled largely by the fact that the funeral home there involved was located within an area that had been classified and zoned as a commercial district in accordance with an ordinance passed by the city of Des Moines pursuant to statutory authorization. That the question involved in that case was not—whether the establishment of a funeral home in a purely residential district would constitute a nuisance, is clearly shown by the statement of the opinion in which we said:

''This question is one of first impression in this court, but in the case at bar we do not think it necessary to decide, and we do not decide, whether or not a funeral home in a residential district is a nuisance *per se*. In the case at bar, the property upon which the appellee Caldwell is operating his funeral home is in a district which has been properly and duly zoned by the city of Des Moines and designated as a commercial district. The question now before this court in this case is whether or not a funeral home, under the circumstances and conditions as set out in this record, located in a district designated as a commercial district, should be enjoined and the property owner restrained from using his property as a funeral home.''

Appellants contend, however, that they never intended and do not now intend to use their premises as a general funeral home in which any considerable number of funerals will be conducted by them; that they never intended and do not now intend to use said premises for the purpose of embalming or preparing

bodies for burial; that all such work will be done at their downtown place of business; that, in the few instances in which funerals will be held from their home, the bodies will not be brought there until the morning of the day of the funeral or the evening before; and that, under these circumstances, there could be no such injury to plaintiffs or their property as would justify the issuance of an injunction against the defendants. In the case of Street v. Marshall, 316 Mo. 698, 291 S. W. 494, 497, practically the same contention was made. In that case it was contended that the undertaking establishment which it was sought to enjoin would receive bodies only which had already been embalmed. The supreme court of Missouri, in rejecting this contention, said:

"This position is without support in the decided cases. While it is true that in many, if not all of them, the charge was made that the establishment complained of would communicate contagion, and would emit noxious gases and offensive smells, such charge was almost universally found to be without substantial support in the evidence. A careful reading of the cases will disclose that what has been stressed, and in the last analysis made the basis of injunctive relief, is this: Constant reminders of death, such as an undertaking establishment and the activities connected with it, give rise to, impair in a substantial way the comfort, repose, and enjoyment of the homes which are subjected to them."

Nor do we think that the appellants' claim, that only a small number of funerals would be conducted from their said premises, can change the fact that the establishment and maintenance of this funeral home will seriously interfere with the plaintiffs' enjoyment of their homes and premises, and result in materially decreasing the value thereof. While the defendants allege that their intention is only to conduct a few funerals from this proposed funeral home, the evidence shows that the number of such funerals will depend upon the number of their patrons who desire funerals to be thus conducted. Not only would the plaintiffs have no assurance that most of defendants' patrons would not desire funerals to be conducted from these premises, but, even if it were accepted as a fact that only a few funerals would be thus conducted, this would not wholly eliminate the damage to plaintiffs' property and the annoyance to which the

plaintiffs would be subjected. The evidence shows that the homes of the plaintiffs and other homes in the vicinity are of the better class, and that the plaintiffs, and very probably others living in the vicinity, established their homes there because of the fact that it was a desirable neighborhood devoted exclusively to residence purposes. The fact, if it be a fact, that the value of plaintiffs' property would not be affected to as great an extent and that they would not suffer as much annoyance, if only a few funerals, instead of many, were held from defendants' premises, does not change the fact that the value of plaintiffs' property would be affected and that plaintiffs would suffer annoyance. Under all the facts of this case, we see no justification whatever for the defendants' attempt to intrude a commercial enterprise into this purely residential neighborhood and subject its residents not only to a loss in the value of their respective properties, but also to the annoyances to the peace and enjoyment of their homes, and possible detriment to their health, which must result if the defendants succeed in what they are attempting to do.

We find no reason for disturbing the decree of the trial court, and it is, therefore, affirmed.—Affirmed.

RICHARDS, C. J., and ANDERSON, PARSONS, STIGER, and SAGER, JJ., concur.