**62 So.2d 100**

**FREDERICK et al. v. BROWN FUNERAL HOMES, Inc.**

**In re BROWN FUNERAL HOMES, Inc.**

**No. 40705.**

April 28, 1952.

On Application for Rehearing Nov. 10, 1952.

G. Allen Kimball, Lake Charles, and Benj. W. Miller, Bogalusa, for relators.

Raymond H. Saal, Covington, for plaintiffs and respondents.

HAWTHORNE, Justice.

Plaintiffs-respondents, residents of the Town of Covington, Louisiana, instituted this action on December 7, 1951, to enjoin the proposed establishment and operation of a funeral home by defendant-relator at 1919 Theard Street in that town. The plaintiffs allege that they are property owners residing in the immediate vicinity of the proposed funeral home; that on October 27, 1951 (a little more than one month prior to the institution of this suit), defendant-relator acquired the lot and resi-

dence designated as No. 1919 Theard Street for the purpose of establishing a funeral home; that the area in which the proposed funeral home is to be located is strictly and exclusively a residential, church, and school area; that the establishment and operation of the proposed funeral home in a strictly residential neighborhood will be a nuisance because it will produce noxious odors, will create an atmosphere detrimental to the use and enjoyment of their homes, and will render them and their families physically uncomfortable; that the arrival and departure of mortuary wagons, hearses, and ambulances and the holding of funerals will serve as a constant reminder of death and will impair in a substantial way the comfort, repose, and enjoyment of their homes, will result in their mental annoyance, will produce upon them and the members of their households depressing effects, will depreciate the value and diminish the rental value of their property. They further allege that the establishment and operation of a funeral home in a strictly residential area is a nuisance per accidens or in fact by reason of the proposed locality, surroundings, or the manner in which such an establishment is conducted or managed, and they conclude that for these reasons they are entitled to be protected from the establishment of this proposed business or occupation as a nuisance because of the inappropriateness of its location.

Upon the filing of this petition the lower court ordered the defendant to show cause why a preliminary injunction should not issue, and after trial of this rule the court granted the preliminary injunction as prayed for by plaintiffs. Upon the refusal of the trial judge to grant a suspensive appeal—a devolutive appeal was granted—, defendant applied to this court for writs. This court ordered the issuance of a writ of certiorari with a stay order and also ordered the respondents to show cause why the relief sought in relator's application for writs should not be granted.

In Borgnemouth Realty Co., Ltd., v. Gulf Soap Corporation, 212 La. 57, 31 So.2d 488, 490, this court recognized the distinction between a nuisance per se and a nuisance per accidens or in fact. We said:

"'* * * A nuisance at law or a nuisance per se is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings. *Nuisances in fact or per accidens are those which become nuisances by reason of circumstances and surroundings.* * * * *whether a thing not a nuisance per se is a nuisance per accidens or in fact depends upon its location and surroundings, the manner of its conduct, or other circumstances.* * * *'" (All italics ours.)

It is universally recognized that the operation and conducting of a funeral home, in itself, does not constitute a nuisance per se. See 3 Cooley on Torts, 4th Ed., sec.

435, p. 180; Annotation, 87 A.L.R. 1061. This rule has been recognized in this state in the case of Moss v. Burke & Trotti, Inc., 198 La. 76, 3 So.2d 281. Plaintiffs-respondents concede this, but contend that the establishment and operation of such a business in a strictly residential area is a nuisance per accidens or in fact; that such a funeral home becomes a nuisance by reason of the inappropriateness of the place (a strictly residential area) in which it is established and conducted.

The greater weight of modern authority is to the effect that the establishment and operation of a funeral home in a strictly residential district is sufficiently objectionable to make it a nuisance in fact. The inherent nature of the business is such that, if located in a purely residential district, it will inevitably create an atmosphere detrimental to the use and enjoyment of residential property in that it will produce a constant reminder of death, depress the residents of homes located in close proximity, materially impair the use and enjoyment of such homes, produce material annoyance and inconvenience to the occupants of adjacent property, and render them physically uncomfortable. Cooley, op. cit. supra; Annotation, 87 A.L.R. 1061, 1062; 54 Am.Jur., Undertakers and Embalmers, sec. 7, p. 512.

According to our research, the courts of 22 states have considered and passed upon the question of whether the establishment and operation of a funeral home should be enjoined in a strictly residential neighborhood. Nineteen of these states follow the majority rule set out hereinabove [1], and three have adopted the view that a funeral home in a strictly residential district does not become a nuisance per accidens by the fact of its location in such a district.[2]

In Higgins v. Bloch, 213 Ala. 209, 104 So. 429, 432, the Supreme Court of Alabama in affirming a decision of the lower court overruling a demurrer to the complaint had this to say:

"The respondents intend and propose, and are now carrying on the work, to establish and maintain the business of undertakers and funeral directors in Mobile, as is generally carried on in that city, and as is particularly described in the complaint, in a place exclusively used as a residential district. They are intruders by that business in that residential district. For more than 50 years, where respondents are locating their business, it has been and is now used for homes, and it is in the very heart of the most popular residence part of the city. It is in close proximity to, only a few feet

1. Alabama, California, Connecticut, Georgia, Indiana, Iowa, Kansas, Michigan, Minnesota, Mississippi, Missouri, Nebraska, New York, Oklahoma, South Carolina, Texas, Virginia, Washington, and Wisconsin.

2. Kentucky, New Jersey, and Oregon.

from, the residences owned and occupied as homes for years by the complainants. * * *

"The home is a place for comfort and repose, where one can eat and sleep and spend the leisure hours with his family free, from business cares and anxieties. A citizen has a right to be protected in his home and in his right to the enjoyment of it. Death is an enemy of human life. 'The last enemy that shall be destroyed is death.' 1 Cor. xv :26. To see its effect is depressing to the ordinary, reasonable person. To see almost daily the hearse carrying in and taking dead bodies from this Leinkauf residence, to know the bodies were there being embalmed, disinfected from disease, probably contagious in its nature, to hear the singing of funeral hymns and psalms in the chapel of this residence, and to see the relatives and friends of the dead and hear their mourning, would have a depressing effect on the mind of a normal person, would continually remind complainants of mortality, would deprive them and their respective homes of the comfort, repose, and pleasure to which they as owners are each entitled, and it would have a tendency to weaken their physical resistance and render them more susceptible, probably to disease from the dead bodies therein if they were infected with contagious diseases. * * "

In Saier v. Joy, 198 Mich. 295, 164 N.W. 507, 508, L.R.A.1918A, 825, the appellate court in affirming a judgment of the lower court enjoining the proposed establishment of a funeral home in a strictly residential area said:

" * * * We think it requires no deep research in psychology to reach the conclusion that a constant reminder of death has a depressing influence upon the normal person. Cheerful surroundings are conducive to recovery for one suffering from disease, and cheerful surroundings are conducive to the maintenance of vigorous health in the normal person. Mental depression, horror, and dread lower the vitality, rendering one more susceptible to disease, and reduce the power of resistance. There is an abundance of testimony in this record confirmatory of this, and it is a matter of common knowledge. The constant going and coming of the hearse * * *; the not infrequent taking in and out of dead bodies; the occasional funeral, with its mourners and funeral airs, held in the part of the house designed for a chapel; the unknown dead in the morgue, and the visits of relatives seeking to identify them; the thought of autopsies, of embalming; the dread, or horror, or thought, that the dead are or may be lying in the house next door, a morgue; the dread of communicable disease, not well founded, as we have

seen, but nevertheless present in the mind of the normal layman—all of these are conducive to depression of the normal person; each of these is a constant reminder of mortality. These constant reminders, this depression of mind, deprive the home of that comfort and repose to which its owner is entitled.

"We cannot overlook the right to engage in a lawful trade, nor the fact that the conduct of the undertaking business is not only lawful, but highly necessary, nor that it is not a nuisance *per se*. Nor can we overlook the right of the citizen to be protected in his home, and his right to the enjoyment there of that repose and comfort that are inherently his. *The question here is not the restraining of defendants' business, but the restraint of its intrusion into a long-established and strictly residential district. * * . * "*

In Williams v. Montgomery, 184 Miss. 547, 186 So. 302, 303, it was said:

"This funeral home was conducted in a modern manner and was sanitary.

"It is our own conclusion, based upon the conflicting evidence in this case, that a constant reminder of death, naturally caused those in the vicinity of a funeral home by its operation, is bound to have a depressing effect upon the persons who have sought a quiet street and established it for a long time, and tends to impair right in this country to enjoy life, liberty, and pursuit of happiness.

"It is true that a funeral home is now deemed a necessity, but its business is—dealing with the dead in the most gruesome manner. It is true as one poet has said that, 'Our hearts like muffled drums are beating funeral marches to the grave', but it is not conducive to the quiet, peaceable enjoyment of one's property, who has selected an exclusively residential district for his home, to have a funeral home protrude itself into that district and conduct its business of dealing with the dead. The constant reminder of death to the average normal human being is not conducive to health and happiness when continually thrusting its 'skull and crossbones' in his presence. The Savior of all mankind when He came face to face with it prayed to His Father, 'Let this cup pass from me'.

\* \* \* \* \* \*

*"The trend of the great weight of authority in this country in other jurisdictions have held under such conditions as we have delineated that such a funeral home conducting its business in the usual way, which protrudes itself (through its owners) upon such a district as we have described, may be perpetually enjoined and abated as a nuisance. The older authorities place the emphasis upon the right of the property owner to use his business for*

a lawful purpose emphasizing the property right. The modern trend of authority puts the stress upon the old maxim, 'use your own so as not to injure another's property', and have held in effect that a funeral home such as we have before us invades the physical rights of those living in the immediate vicinity, and close thereto. It must be conceded that the operation of a funeral home is a lawful business, but the question presented—is it lawful under the circumstances here when we balance the rights of human beings and homes and environments as against mere property rights? * * *

\* \* \* \* \* \*

"* * * We conclude with the general statement that judges are human beings, who try to keep abreast with the judicial trend of the people for whom they apply the law. We must be supposed to be acquainted with the reaction of the average normal person, and of their sentiments and feelings, and we are certain that the obtrusion of a funeral home, over the protest of the people who have established and for a long time lived in a beautiful environment, a residential district, is bound to have a depressing effect upon the financial value of the properties, that the scenes about a funeral home are bound to depress the feelings and comfort and quiet enjoyment of the property of those who witness and live under its shadow daily;

and where all the paraphernalia and symbols of death are constantly exhibited, the reaction of a normal person must be that of one who feels a keen sense of depression. It is psychological that a person who lives in a depressed atmosphere will normally be depressed in spirit and sensibility, and will be weakened in a power to resist the vicissitudes of life, including disease. One who has selected a quiet home for happiness and joy and comfort will, by the obtrusion of a funeral home in his immediate vicinity, have his right to comfort, repose, and enjoyment in the home materially affected; and there must ensue a material depreciation of the value of the home. Under such circumstances, as delineated here, a funeral home although lawful, although conducted in a modern approved manner, is a nuisance to those so affected.

"We are not here dealing with a funeral home for an appreciable length of time permanently established unchallenged, nor with one located on a street already being used for conducting commercial enterprises."

The Supreme Court of Missouri in Streett v. Marshall, 316 Mo. 698, 291 S. W. 494, 497, said:

"* * * appellants argue that an undertaking establishment where only bodies which have been embalmed are received, thus eliminating all question

of communicating disease or fouling the air with noxious or offensive odors and gases, cannot be held to be a nuisance, although conducted in an exclusively residential neighborhood. In other words, in order for such an establishment to constitute a nuisance, its character must be such as to directly affect the health or grossly offend the physical senses. This position is without support in the recited cases. While it is true that in many, if not all of them, the charge was made that the establishment complained of would communicate contagion, and would emit noxious gases and offensive smells, such charge was almost universally found to be without substantial support in the evidence. A careful reading of the cases will disclose that what has been stressed, and in the last analysis made the basis of injunctive relief, is this: Constant reminders of death, such as an undertaking establishment and the activities connected with it give rise to, impair in a substantial way the comfort, repose, and enjoyment of the homes which are subjected to them. * * *

* * * * * *

"* * * No amount of skill or tact can wholly eliminate from the undertaking business its constant reminders of death, the one thing from which the normal individual · instinctively flees, whatever his religion or philosophy of life. To be compelled to live in a con-

tinuing atmosphere of death is intolerable. While the undertaking business is not only lawful but indispensable, there is no justification or excuse for its seeking out and establishing itself in localities devoted exclusively to homes, where it not only materially detracts from the comfort and happiness of those who dwell there, but ruinously depreciates the values of their real estate as well."

In Blackburn v. Bishop et ux., Tex.Civ. App., 299 S.W. 264, 271, the court stated:

"During all recorded time, man has enveloped the home with a sanctity that is not given to any other place on earth. * * *

"Always 'home' has meant peace and contentment, and man's rest under his own vine and fig tree are symbolical of such a condition. Holy Writ gives us such a picture when it says: 'Judah and Israel dwelt safely, every man under his vine and under his fig tree from Dan even unto Beersheba, all the days of Solomon.' 1 Kings 4:25.

"For many reasons the broadest protection has been afforded by law to preserve the immunity of the home from distresses and vexations of life, and to protect the happiness and contentment of the family, and such home should not be destroyed by the demand of a legal business in a residential district, the legal operation of which, it is made to appear from the evidence in this

case, has created, and is creating, unsupportable conditions depriving the appellees and their family of the ability to enjoy their home in peace and comfort * * *."

Other cases in which the majority rule was followed are Laughlin, Wood & Co. v. Cooney, 220 Ala. 556, 126 So. 864; White v. Luquire Funeral Home, 221 Ala. 440, 129 So. 84; Mutual Service Funeral Homes v. Fehler, 254 Ala. 363, 48 So.2d 26; Brown v. Arbuckle, 88 Cal.App.2d 258, 198 P.2d 550; Jack v. Torrant, 136 Conn. 414, 71 A. 2d 705; McGowan v. May, 186 Ga. 79, 196 S.E. 705; Albright v. Crim, 97 Ind.App. 388, 185 N.E. 304; Reiser v. Osborn, 114 Ind.App. 617, 53 N.E.2d 545; Bevington v. Otte, 223 Iowa 509, 273 N.W. 98; Leland v. Turner, 117 Kan. 294, 230 P. 1061; Hatcher v. Hitchcock, 129 Kan. 88, 281 P. 869; Weinmann v. Miles, 134 Kan. 107, 4 P.2d 437; Fink v. Smith, 140 Kan. 345, 36 P.2d 976; Dillon v. Moran, 237 Mich. 130, 211 N.W. 67; Kundinger v. Bagnasco, 298 Mich. 15, 298 N.W. 386; Rockenbach v. Apostle, 330 Mich. 338, 47 N.W.2d 636; Gunderson v. Anderson, 190 Minn. 245, 251 N.W. 515; Davis v. Holmes, 189 Miss. 554, 198 So. 25; Smith v. Fairchild, 193 Miss. 536, 10 So.2d 172; Tureman v. Ketterlin, 304 Mo. 221, 263 S.W. 202, 43 A.L.R. 1155; Clutter v. Blankenship, 346 Mo. 961, 144 S.W.2d 119; Beisel v. Crosby, 104 Neb. 643, 178 N.W. 272; Arthur v. Virkler, 144 Misc. 483, 258 N.Y.S. 886; Jordan v. Nesmith, 132 Okl. 226, 269 P. 1096; Fraser v. Fred Parker Funeral Home, 201 S.C. 88, 21 S.E. 2d 577; King v. Guerra, Tex.Civ.App., 1 S.W.2d 373; Bragg v. Ives, 149 Va. 482, 140 S.E. 656; Densmore v. Evergreen Camp No. 147, Woodmen of the World, 61 Wash. 230, 112 P. 255, 31 L.R.A.,N.S., 608; Goodrich v. Starrett, 108 Wash. 437, 184 P. 220; Haan v. Heath, 161 Wash. 128, 296 P. 816; Cunningham v. Miller, 178 Wis. 22, 189 N.W. 531, 23 A.L.R. 739.

It is important to point out that the decisions throughout the United States are uniform in holding that the proposed establishment and operation of a funeral home in an area or district which is partly commercial and partly residential or which is undergoing transition from a residential to a commercial area will not be enjoined. Fentress v. Sicard, 181 Ark. 173, 25 S.W. 2d 18; Dawson v. Laufersweiler, 241 Iowa 850, 43 N.W.2d 726; Devereux v. Grand-Americas Junior Corp., Sup., 85 N.Y.S.2d 783; Meldahl v. Holberg, 55 N.Dak. 523, 214 N.W. 802; Rick v. Cramp, 56 Pa.Dist. & Co. 295; O'Connor v. Ryan, Tex.Civ. App., 159 S.W.2d 531.

No hard and set rule can be laid down as to what constitutes a strictly residential district or a semi-commercial district or an area in the period of transition from a residential to a commercial district, but that question will have to be determined from the facts and circumstances of each particular case. That question in the instant case of necessity will have to be determined when the case is tried on its merits. The

Supreme Court of Mississippi in the case of Smith v. Fairchild, supra, made the following pertinent observation:

> " * * * The question is comparative and relative. The extent of the territory is only one factor. The number, kind, value and locations of the structures therein, the uses to which the territory is adapted, and all the surrounding facts and circumstances are to be considered. No hard and fast rule can be laid down. Each case must depend upon its own facts. * * *"
> [193 Miss. 536, 10 So.2d 174.]

Relator in support of its contention that the preliminary injunction was improperly issued here relies principally on the case of Moss v. Burke & Trotti, Inc., 198 La. 76, 3 So.2d 281, cited supra. The decision in that case is not controlling and is clearly distinguishable from a factual viewpoint, as pointed out by the trial judge in his return to the rule issued herein, in which he said:

> " * * * respondent avers that in the case of Moss v. Burke & Trotti, supra, the identical point was at issue as in the case at Bar, but in that case the Court found that the proposed funeral home would not be in a strictly residential area as in the case at Bar, for in the Moss v. Burke & Trotti case, which originated in Lake Charles, the defendant's establishment was to be located in a district both residential and commercial in its nature, and in addition, the plaintiff in that case complained only of the depreciated value of his residence property and sought to recover damages for loss of rent and depreciation, and in addition, there was a blacksmith shop in the very block with the undertaking establishment; there was the City Hall property of the City of Lake Charles in the adjoining block, which fronted the chief business street of Lake Charles; there was in an adjoining block the grocery store, and in still another adjoining block, the city fire station and a filling station, joined by a cleaning and dyeing establishment, all of which physical aspects are entirely contrary to the facts in the case at Bar."

In that case this court found as a fact, as pointed out by the trial judge in this case, that the area in which the funeral home was located was semi-commercial or in transition from a residential area to a commercial area, and under such finding of fact refused to enjoin defendant from conducting a funeral home in the district. The decision in that case is correct and is in full accord with the uniform jurisprudence throughout the country that under such facts an injunction will not issue. See authorities cited supra. The Supreme Court of Iowa in a 1950 decision viewed the Burke & Trotti case as did the district judge in this case, citing it as supporting the statement that "A number of courts have refused to enjoin establishment of a

funeral home in a location close to the business district or in a state of transition from residences to commercial uses. * * * " [3]

The principle underlying the majority rule is found in Article 667 of our LSA–Civil Code, which provides:

"Although a proprietor may do with his estate whatever. he pleases, still he can not make any work on it, which may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him."

After a careful review of the law, all the admissible evidence, and the pleadings in the instant case, we are not in a position to say that the trial judge abused his discretion in denying to defendant-relator a suspensive appeal.

For the reasons assigned, the writs issued herein are recalled, and the case is remanded to the district court for trial on its merits consistently with the views expressed herein. Relator is to pay all costs incurred in this court; all other costs are to await the final disposition of the case on its merits.

McCALEB, Justice (dissenting).

I am sure that it is unpleasant to live next to a funeral home. Yet, in the absence of zoning ordinances or covenants in deeds running with the land prohibiting its location within a particular area, there is no authority under our law warranting the issu-

ance of an injunction against the establishment of such a business in a residential section of a city—unless it is shown that its operation is actually a nuisance in fact by reason of the manner in which it is conducted rather than because of the nature of the business. Indeed, this court, in Moss v. Burke & Trotti, Inc., 198 La. 76, 3 So.2d 281, 285, has tersely stated the applicable principle, thus:

" * * * In the absence of legal zoning prohibition. any business establishment. may be established or located in a residential district, however it may affect the property values, unless by its very nature, its operation shall *physcally* annoy the inhabitants." (Italics mine.)

The foregoing quotation is nothing more than judicial recognition and application of the rules set forth in Articles 667, 668, and 669 of the LSA–Civil Code, which govern the instant case. Article 667 provides that, while a proprietor has the right to use his estate in any way he pleases, he cannot make any work on it which deprives his neighbor of the liberty of enjoying his own, "or which may be the cause of any damage to him." Article 668 qualifies this principle by declaring that, while the owner of property may not make any work which damages his neighbor's buildings, still he is at liberty to use his ground as he pleases "although it should occasion some *inconvenience* to his neighbor." And Article 669

3. Dawson v. Laufersweiler, 241 Iowa 850, 43 N.W.2d 726, 731.

limits Article 668 by stating, in effect, that an owner may not do work on his premises which causes inconvenience to his neighbor "by diffusing smoke or nauseous smell," and that the question of whether the neighbor must suffer these inconveniences "must be determined by the rules of the police, or the customs of the place." (Italics mine.)

In the case at bar, it is clear that Article 668 of the Code controls—for plaintiffs do not show that they will sustain physical damage, but only the inconvenience of being forced to come into daily contact with defendant's business. The majority holding, that the intended operation by defendant of a funeral home constitutes a nuisance in fact, is unsound, in my opinion, because its net effect is to conclude that a funeral home in a residential district is a nuisance per se, despite denials that the business of burying dead is, of itself, legally objectionable. True enough, the majority ruling is supported by a vast weight of authority from other states. For my part, I can only say that I disagree with the principle upon which those pronouncements are founded.

It is well settled (Borgnemouth Realty Co. v. Gulf Soap Corp., 212 La. 57, 31 So. 2d 488, and the authorities there cited) that the difference between a nuisance per se and a nuisance in fact lies in the proof and not the remedy. In the former, the thing is a nuisance as a matter of law, whereas, in the latter, the right to relief is dependent on averment and proof of the act charged as a nuisance.

In view of this, I experience difficulty in discerning why, if a funeral home is not to be regarded a nuisance per se, it should be, ipso facto, deemed to be a nuisance merely because it is established in a residential neighborhood, without proof of actual physical annoyance to the adjacent inhabitants. In each instance the nature of the business is exactly the same; difference of location alone should not render one illegal and the other not.

The courts that subscribe to a doctrine adopted by the majority say that a funeral home becomes a nuisance, when established in a residential section, because the operations conducted are reminders of death, which naturally affect the neighbors. But this is true of the mortuary business no matter where it is situated. Hence, those courts, which conclude that a funeral home is or is not a nuisance depending entirely upon its situation, and that it is a nuisance when located in a residential area, are not interpreting and applying the law; they are actually enacting zoning regulations, thus usurping the function of the lawmaking bodies.

I, therefore, respectfully dissent.

LE BLANC, Justice (dissenting).

I recognize the fact that under the authorities cited in the prevailing opinion, the majority view in the country is that the establishment of funeral homes or parlors in strictly residential areas is considered a nuisance per accidens. The reason as

given in many of the quotations contained in the majority opinion is that such establishments tend to create a depressing effect in that they constitute, for those living in the surrounding area, a constant reminder of death and thus produce an annoyance to the feelings of those individuals who don't like to contemplate such a tragic event. I realize that that is not an unusual feeling among many individuals but I don't believe that the business that is conducted by modern funeral homes or parlors, especially in the manner in which the public observes, is more of a reminder of death than is the funeral service that is conducted at a church in the same area, attended as it is by the toll of the funeral bell and the procession of automobiles carrying the mourners, following the funeral hearse. Churches, as we know, and as we learn from this very case because there are two of them, abound in purely residential districts in large cities as well as in towns and villages, and in most religions, as is also well known, the bodies of the dead are taken there for a last prayer and blessing before being buried in the cemetery. Cemeteries too, are, in many instances, located in the heart of residential areas and certainly the sight of the graves and tombs would seem to impress anyone, in my opinion, as being, more than any other object, a very constant reminder of our inevitable fate.

I fully respect the feelings of individuals who do not like to have their thoughts made to dwell on this most certain of all human experiences but in my humble opinion that is purely a personal emotion which I don't think affects their physical well-being, and if we are to be guided by any authority on this point I believe it can be found in the very decision of this court in the case of Moss v. Burke & Trotti, Inc., 198 La. 76, 3 So.2d 281, 285, cited in the majority opinion. The court, after reviewing many authorities on the very point of conducting the business of a funeral home, concluded from them that "In the absence of legal zoning prohibition any business establishment may be established or located in a residential district, however it may affect the property values, unless by its very nature, its operations shall physically annoy the inhabitants."

I believe too, as intimated in that case, that where, in a matter of this kind, it is only the individual's personal emotions that are involved, they have to yield to the greater rights of a property owner which are provided for him in this State under the Articles of the LSA–Civil Code referred to in the dissenting opinion of Justice McCaleb, which after all, are merely an elaboration of the rule of law stated in the familiar Latin maxim: "Sic utere tuo ut alienum non laedas." A person must so use his own as not to injure another's property. But, as pointed out in the Articles of the Code, although he may not make any work on his property which may deprive his neighbor of the liberty of enjoying his own,

or which may cause damages to him, yet he is at liberty "of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor." Under Article 668 it would seem that an act which occasions only an inconvenience is not enough, there must be real damage. Under that view and under the holding in the case of Moss v. Burke & Trotti, Inc., supra, that the nuisance complained of must cause some physical annoyance, I am not inclined to follow the jurisprudence relied on in the majority opinion and I, therefore, respectfully dissent.

On Application for Rehearing

PONDER, Justice.

In this suit the plaintiffs sought to enjoin the establishment or operation of a funeral home in a purported residential section of the Town of Covington. The trial court granted a preliminary injunction. The defendant was granted a devolutive appeal and applied to this court for writs which were granted. This court issued a writ of certiorari with a stay order and ordered the plaintiffs to show cause why the relief sought in the defendant's application for writs should not be granted. Upon hearing of the rule, this court recalled the writs and remanded the cause for trial on the merits. A rehearing is now submitted for our consideration.

The plaintiffs opposed the granting of the rehearing and contended that under Rule XII, Section 4 of the Rules of the Supreme Court, the rehearing was improvidently granted since the judgment did not finally dispose of the case. This rule is without application to the present case and it is expressly provided in Section 5 of Rule XII of the Rules of the Supreme Court that a petition for rehearing will be considered when the Court has decided a case on a writ of review to the Court of Appeal, or under the court's supervisory jurisdiction, the same as if the case had been decided on appeal.

Our main concern in granting the rehearing was whether or not the provisions of Articles 667, 668 and 669 of the LSA–Civil Code were properly interpreted in the majority opinion in arriving at the conclusion that the operation of the funeral home was a nuisance in fact or per accidens. As we take it the majority opinion is to the effect that the funeral home became a nuisance because of its location and enjoined its operation before it was established. According to the record the funeral home was not in operation at the time the suit was filed and tried.

On reconsideration we have arrived at the conclusion that the injunction should be set aside.

We are governed in this controversy by Articles 667, 668 and 669 of the LSA–Civil Code, which read as follows:

"Although a proprietor may do with his estate whatever he pleases, still he can not make any work on it, which

may deprive his neighbor of the liberty of enjoying his own, or which may be the cause of any damage to him." Article 667, LSA–Civil Code.

"Although one be not at liberty to make any work by which his neighbor's buildings may be damaged, yet every one has the liberty of doing on his own ground whatsoever he pleases, although it should occasion some inconvenience to his neighbor.

"Thus he who is not subject to any servitude originating from a particular agreement in that respect, may raise his house as high as he pleases, although by such elevation he should darken the lights of his neighbor's house, because this act occasions only an inconvenience, but not a real damage." Article 668, LSA–Civil Code.

"If the works or materials for any manufactory or other operation, cause an inconvenience to those in the same or in the neighboring houses, by diffusing smoke or nauseous smell, and there be no servitude established by which they are regulated, their sufferance must be determined by the rules of the police, or the customs of the place." Article 669, LSA–Civil Code.

In the case of Borgnemouth Realty Company, Limited v. Gulf Soap Corporation, 212 La. 57, 65, 31 So.2d 488, 490, this court stated:

" 'From the point of view of their nature, nuisances are sometimes classified as nuisances per se or at law, and nuisances per accidens or in fact. A nuisance at law or a nuisance per se is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings. Nuisances in fact or per accidens are those which become nuisances by reason of circumstances and surroundings.' 46 C.J. 648, Section 5. See, also, 39 Am.Jur. 289, Section 11. As pointed out in the latter authority, 'The difference between a nuisance per se and a nuisance in fact lies in the proof, not in the remedy. In the case of a nuisance per se, the thing becomes a nuisance as a matter of law. Its existence need only be proved in any locality, and the right to relief is established by averment and proof of the mere act. But whether a thing not a nuisance per se is a nuisance per accidens or in fact depends upon its location and surroundings, the manner of its conduct, or other circumstances. In such cases, proof of the act and its consequences is necessary. The act or thing complained of must be shown by evidence to be a nuisance under the law, and whether it is or is not a nuisance is generally a question of fact.' "

We have carefully considered the opinion handed down in the case of Moss v. Burke & Trotti, Inc., 198 La. 76, 87, 3 So.2d 281, 285, and have reached the con-

clusion that the pronouncement made therein is a proper interpretation of our codal articles, viz.: "In the absence of legal zoning prohibition any business establishment may be established or located in a residential district, however it may affect the property values, unless by its very nature, its operation shall physically annoy the inhabitants."

■■■ The operation of a funeral home is a lawful enterprise, Moss v. Burke & Trotti, Inc., supra, and under the provisions of Article 667 of the LSA–Civil Code the defendant has a right to do with his estate as he pleases provided he does not cause damage to his neighbor. As pointed out in the majority opinion the operation of a funeral home is not a nuisance per se and it is impossible for us to state at this time whether it would be operated in such a manner as to result in a nuisance. Mere inconvenience to an adjoining property owner would not necessarily constitute a nuisance. Article 668 of the LSA–Civil Code. There is no zoning ordinance or police regulation prohibiting the establishment of such an enterprise in any portion of the town and the evidence fails to show that the custom of the place would prohibit same. From a careful reading of the aforementioned articles of the LSA–Civil Code, it is apparent that, unless the establishment and operation of the funeral home is prohibited by rules of police or custom of the place, it cannot be enjoined prior to its operation and then only if it is op-

erated in such a manner as to cause damage to those living in neighboring houses.

The case of Osborn v. City of Shreveport, 143 La. 932, 79 So. 542, 3 A.L.R. 955, is only authority for what it held, that an ordinance prohibiting undertaking shops except on the business streets of the city is valid, and whatever else was said is purely obiter dicta and of no controlling effect in the case at bar.

■■■ This court has on numerous occasions refused to enjoin the establishment or erection of a lawful business simply on the ground that it might be conducted so as to become a nuisance. Bell v. Riggs & Bros., 38 La.Ann. 555; Lewis v. Sandell, 118 La. 852, 43 So. 526; Canone v. Pailet, 160 La. 159, 106 So. 730; Graver v. Lepine, 161 La. 97, 108 So. 138.

■■■ In Bell v. Riggs & Bros., cited supra, 38 La.Ann. 555, 556, this court said:

"The rule is founded in reason and firmly established by authority that injunction will not lie against a prospective nuisance except in cases where its establishment will occasion imminent danger or irreparable injury, or at least where there is no question that the proposed erection will be a nuisance violative of legal right. Wood, Law of Nuisances, para. 103, 104."

Likewise in Lewis v. Sandell, cited supra, 118 La. 852, 859, 43 So. 526, 529, the court held "that a lawful business not yet in existence and not a nuisance per se

could not be enjoined on the face of the papers until evidence had been adduced to establish same".

Again in Canone v. Pailet, cited supra, 160 La. 159, 162, 106 So. 730, and Graver v. Lepine, cited supra, 161 La. 97, 100, 108 So. 138, 139, this court held: "A lawful business is never a nuisance per se, and no one has the right to prevent the establishment of such business for fear that it might be conducted so as to become a nuisance." Citing ample authority to support the statement.

While the common-law authorities relied upon and cited by the plaintiffs may be persuasive, they are not decisive of the issue in view of our codal articles and jurisprudence.

For the reasons assigned, it is now ordered that the rule be discharged, and the preliminary writ of injunction dissolved. The case is remanded to be tried on the merits consistent with the views herein expressed. Plaintiffs-respondents to pay all costs incurred in this court; all other costs are to await the final disposition of the case.

On Rehearing

HAWTHORNE, Justice (dissenting).

There was presented for our consideration originally and on rehearing only one question: Is a funeral home by its very nature such a business that when located in a strictly residential area its operation will so annoy and inconvenience the residents that they will be deprived of the enjoyment

of their homes? There was then and there is now no disagreement on the general law relative to nuisances, which, as far as I can see, is all that is discussed in the opinion on rehearing. In that opinion there is no discussion at all of the extent of annoyance and inconvenience that a funeral home in a residential area will cause the adjoining residents or landowners.

If the answer to the question presented by this case is in the affirmative, the establishment of the business would be prohibited under LSA–Civil Code Articles 667, 668, and 669 upon proof that the district is strictly residential, and under the courts' authority to issue injunctions the respondents would be entitled to injunctive relief. If the answer to this question is in the negative, they have no right to interfere with the use that relator proposes to make of its property. I can only conclude from the lack of discussion of the real question in the opinion on rehearing that the reasons given for answering it in the affirmative on original hearing are unanswerable. I cannot believe that the average person in this jurisdiction is any less sensitive to the depressing effects of a funeral home than is the average person in the common-law jurisdictions where it has been concluded that as a matter of fact funeral homes are by their very nature so depressing that their close proximity deprives one of the enjoyment of his home and that they can be enjoined when they seek to intrude themselves into an exclusively residential district.

The Code provisions in my opinion do not make the relator's privilege of using its property as it pleases any more important than the respondents' right to use and enjoy their premises. A comparative evaluation of the conflicting interests in this case has convinced me that the gravity of the annoyance and inconvenience that will be caused to the respondents by the business that the relator proposes to establish is such that the relator ought to be enjoined if the respondents can show that the district is exclusively residential.

I respectfully dissent.